**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles E. MAYBERRY,**
**Defendant-Appellant.**

**No. 85–1405.**

United States Court of Appeals,
Tenth Circuit.

Oct. 7, 1985.

Presiliano Torrez, Asst. U.S. Atty. and William L. Lutz, U.S. Atty., and Mark D. Jarmie, Asst. U.S. Atty., on brief, Albuquerque, N.M., for plaintiff-appellee.

Tova Indritz, Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Before HOLLOWAY, Chief Judge, JOHN P. MOORE, Circuit Judge, and CROW, District Judge.*

JOHN P. MOORE, Circuit Judge.

This appeal presents the question of whether the assessment provisions of 18 U.S.C. § 3013 (1984) are applicable to assimilated crimes. We hold they are not in this case. The defendant here pled guilty to two counts of an information charging him with breaking and entering a dwelling on Kirtland Air Force Base in violation of N.M.Stat.Ann. § 30–14–8 (1978) and the Assimilative Crimes Act, 18 U.S.C. § 13. Because the offenses occurred after the effec-

tive date of the Comprehensive Crime Control Act of 1984, October 12, 1984, the district court imposed two $50 special assessments under § 1405(a) of that Act. 18 U.S.C. § 3013.

On appeal defendant argues that the district court erred in imposing the special assessments against him. First, defendant asserts that the special assessment provision is not applicable to offenses committed under the Assimilative Crimes Act. Second, defendant contends that even if the special assessment provision is applicable, only one assessment can be imposed on a defendant regardless of the number of offenses to which he is convicted. We reverse the judgment of the district court applying the special assessment provisions imposed under 18 U.S.C. § 3013; consequently, we do not reach the second question.

■ Section 1405(a) of the Comprehensive Crime Control Act of 1984 amended title 18 by adding section 3013. Section 3013 is entitled "Special assessment on convicted persons." The section in full reads:

(a) The court shall assess on any person convicted of an offense against the United States—

(1) in the case of a misdemeanor—

(A) the amount of $25 if the defendant is an individual; and

(B) the amount of $100 if the defendant is a person other than an individual; and

(2) in the case of a felony—

(A) the amount of $50 if the defendant is an individual; and

(B) the amount of $200 if the defendant is a person other than an individual.

(b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.

18 U.S.C. § 3013. The stated purpose of the special assessment provision is to generate income to offset the cost of a newly created victim's assistance fund. S.Rep. No. 497, 98th Cong., 2d Sess. 13, *reprinted*

---

* Honorable Sam A. Crow, District Judge for the　　District of Kansas, sitting by designation.

*in* 1984 U.S.Code Cong. & Ad.News 3182, 3607, 3619.

The Assimilative Crimes Act, 18 U.S.C. § 13, states:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense *and subject to a like punishment.*

(Emphasis added.) The purpose of this Act is to conform the criminal law of federal enclaves to that of local law except in cases of specific federal crimes. *United States v. Best,* 573 F.2d 1095 (9th Cir.1978). Essentially, the Act fills gaps in the federal law by providing a set of criminal laws for federal reservations. *United States v. Prejean,* 494 F.2d 495, 496 (5th Cir.1974). Since there is no express enactment of Congress providing punishment for breaking and entering, the Assimilative Crimes Act and New Mexico law were appropriately applied in this case.

The question we now face, whether the penalty assessment applies to assimilative crimes, has not yet been considered. As we view the problem, it is one of statutory construction. The assessment, by its terms, applies to "any person convicted of an offense against the United States." 18 U.S.C. § 3013. Clearly, persons convicted of assimilative crimes have been "convicted of an offense against the United States." This does not mean, however, that the assessment necessarily applies to assimilative crimes. Dependent upon the laws of the forum state, the terms of the Assimilative Crimes Act may preclude this result in some cases.

The Assimilative Crimes Act makes clear that an individual who commits an act on a federal reservation which is illegal under the laws of the state where the enclave is located "shall be guilty of a like offense *and subject to a like punishment"* under the federal law. (Emphasis added.) This language has consistently been construed to require punishment only in the way and to the extent that the same offense would have been punishable if the territory embraced by the federal reservation or enclave where the crime was committed remained subject to the jurisdiction of the state. *United States v. Press Publishing Co.,* 219 U.S. 1, 31 S.Ct. 212, 55 L.Ed. 65 (1911); *United States v. Dunn,* 545 F.2d 1281 (10th Cir.1976). Thus, if the special assessment is found to be a punishment, and New Mexico has no similar punishment, imposition of the assessment *in this case,* would be violative of the Assimilative Crimes Act.

Because the parties agree that New Mexico has no similar provision for collecting special assessments from convicted persons, the issue before us resolves to whether the special assessment is a "punishment" as that term is used in the Assimilative Crimes Act. As such, the issue is one of federal and not state law. *Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814 (1944).

 The term "punishment" is not defined in the Assimilative Crimes Act. Where a statute contains no definition of the term in question, the general rule is that the word is to be interpreted in its ordinary, everyday sense. *First Nat. Bank & Trust Co. of Chickasha v. United States,* 462 F.2d 908 (10th Cir.1972). Accordingly, we adopt the definition of punishment set forth in Black's Law Dictionary 1398 (rev. 4th ed. 1968) as follows:

Any pain, penalty, suffering, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him, or for his omission of a duty enjoined by law.

Those cases which have considered the term in connection with the question of whether a specific statute can be incorporated into the federal law under the Assimilative Crimes Act have found the word to

have a broad and inclusive meaning. *United States v. Vaughan,* 682 F.2d 290, 294 (2nd Cir.1982); *cf. United States v. Dunn,* 545 F.2d 1281 (10th Cir.1976); *United States v. Best,* 573 F.2d 1095 (9th Cir.1978).

In light of this definition and its broad scope, we can reach no other conclusion but that the special assessment at issue in this case constitutes a form of "punishment," which, when imposed upon those persons convicted of assimilative crimes, violates both the Assimilative Crimes Act's "subject to like punishment" limitation and the Act's purposes. An examination of the special assessment statute's language, its legislative history, and the policy behind the Assimilative Crimes Act supports our conclusion.

On its face, the statute appears penal in nature. First, although monetary, the assessment clearly places an additional burden or penalty upon the defendant. *Ex Parte Lange,* 85 U.S. 163, 18 Wall. 163, 21 L.Ed. 872 (1873); *See Ward v. Coleman,* 598 F.2d 1187, 1193 (10th Cir.1979), *rev'd on other grounds, United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) (monetary penalties inflict pocketbook deterrence or restraint). Second, the assessment can be imposed only following conviction of a crime or offense against the United States. As such, its imposition is a direct consequence of conviction rather than, for example, a tax upon the general public. (An acquitted defendant escapes imposition of the assessment.) Third, the statute imposes a higher assessment on those persons convicted of felonies than on those convicted of misdemeanors. In our judgment, the assessment of higher penalties for more serious crimes as an aspect of "making the punishment fit the crime," furthers the punitive objective. Last, the statute, by its own terms, provides that the amount assessed will be collected in the same way that fines are collected in criminal cases. The practical effect of this provision is to make the assessment indistinguishable from a criminal fine.

Additional support can be found in the statute's legislative history. Despite the fact that the section's stated purpose is to assist victims of criminal activity by establishing a relief fund, there can be little doubt that Congress understood the assessment to be at least partially punitive. In this regard, we note the Senate Report, which accompanied Senate Bill 2423, acknowledges that income generated through the assessment will not be substantial. S.Rep. No. 497, 98th Cong., 2d Sess. 13, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3607, 3619. Such a statement casts doubt upon the notion that the Act's sole purpose was to raise revenue. We also point out that the same purpose—raising revenue to offset the costs of the victims relief program—was attributed to the fine increase section of the 1984 Crime Act. S.Rep. No. 497, 98th Cong., 2d Sess. 14, *reprinted in* U.S.Code Cong. & Ad.News 3607, 3620. Moreover, we think it of some import that the actual provision of § 1405(a) of the 1984 Crime Act entitles the section, "Penalty Assessment," 98 Stat. 2174; the Senate Report accompanying the bill refers to the assessment as a "penalty fee" and as "penalties"; and the Senate Report terms the section "Penalty Assessment Fines." S.Rep. No. 497, 98th Cong., 2d Sess. 13, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3607, 3619.

■ Finally, we note application of special assessments to persons convicted of assimilative crimes would violate the fundamental policy underlying the Assimilative Crimes Act. As stated previously, the policy behind that Act is to insure that those persons alleged to have engaged in a non-federal criminal act on a federal enclave be treated as if the crime had occurred in the surrounding state. *United States v. Press Publishing Co., supra,* 219 U.S. at 10, 31 S.Ct. at 214; *United States v. Sharpnack,* 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). Imposition of the § 3013 assessment on those persons convicted of assimilative crimes clearly places an additional penalty on those who commit state crimes on federal enclaves. As such, application of the assessment to persons convicted of assimilative crimes in federal

court is contrary to the Assimilative Crimes Act's principle of conformity to state criminal law. *United States v. Marcyes*, 557 F.2d 1361 (9th Cir.1977).

 For the reasons expressed above, absent a specific directive from Congress that the special assessment be imposed on those persons convicted of assimilative crimes, we decline to so apply the assessment in this case. Accordingly, we reverse and remand with instructions to vacate the assessments against the defendant.