UNITED STATES of America, Appellee,

v.

**Carmen Miledy GRIFFIN,
Defendant–Appellant.**

UNITED STATES of America, Appellee,

v.

**Sank HINES, Defendant–Appellant.**

UNITED STATES of America, Appellee,

v.

**Deborah TUCKER,
Defendant–Appellant.**

Nos. 1302, 1303, 1313, Dockets 89–1104,
89–1105, 89–1160.

United States Court of Appeals,
Second Circuit.

Argued June 14, 1989.

Decided Aug. 29, 1989.

Abraham L. Clott, The Legal Aid Soc., Federal Defender Services Unit, New York City, for defendants-appellants.

Jeh C. Johnson, Asst. U.S. Atty., New York City (Benito Romano, U.S. Atty. for S.D.N.Y., and Kerri Martin Bartlett, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before OAKES, Chief Judge, and VAN GRAAFEILAND and PRATT, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Carmen Griffin, Sank Hines and Deborah Tucker pled guilty to felony charges before Judges Ward, Mukasey and Wood respectively. In each case, the judge included a $50 assessment pursuant to 18 U.S.C. § 3013(a)(2)(A) in the penalty imposed. At the time of the offenses in question, section 3013 required sentencing courts to assess $25 against any individual convicted of a misdemeanor and $50 against any individual convicted of a felony. The proceeds of such assessments are placed in a Crime Victims Fund, a separate account of the United States Treasury, from which the government makes grants to aid crime victim compensation programs at the state level and to enhance federal victim assistance efforts. Each judge rejected the defendant's argument that section 3013 violated the Origination Clause of the Constitution, Art. I, § 7, which provides in pertinent part that "All Bills for raising Revenue shall originate in the House of Representatives." We agree with the district courts' decisions and affirm the imposition of the special assessment in each case.

These appeals present us with two separate but related issues. The first is the traditionally judicial one of statutory interpretation, *i.e.*, did the statute originate as a bill for raising revenue. The second involves a review of the legislative process, an issue that courts prefer to avoid if possible. *See Coleman v. Miller*, 307 U.S. 433, 469–70, 59 S.Ct. 972, 989, 83 L.Ed.´ 1385

(1939); *Field v. Clark,* 143 U.S. 649, 669–80, 12 S.Ct. 495, 496, 36 L.Ed. 294 (1892). Because we are satisfied that section 3013 was not enacted for the purpose of raising revenue, as that term is used in the Origination Clause, we see no need to address the second issue.

However parties may differ concerning the overall congressional intent in the enactment of section 3013, one thing is clear. Congress intended that the assessments provided for in that section were to be imposed as part of the sentencing process. Moreover, Congress surely was aware that "[i]n a criminal case final judgment means sentence", *Miller v. Aderhold,* 288 U.S. 206, 210, 53 S.Ct. 325, 325–26, 77 L.Ed. 702 (1933), and that the imposition of sentence is a "stage" of criminal trials, requiring the presence of defense counsel, *United States v. Behrens,* 375 U.S. 162, 164–66, 84 S.Ct. 295, 296–97, 11 L.Ed.2d 224 (1963); Fed.R. Crim.P. 43. In *United States v. Pagan,* 785 F.2d 378 (2d Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986), we held that a sentence lacking a section 3013 assessment would not be a legal sentence. *Id.* at 380. In similar vein, the Supreme Court held in *Ray v. United States,* 481 U.S. 736, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987), that the concurrent sentence doctrine could not be applied where the trial court imposed a separate section 3013 assessment in each count. *Id.* at 737, 107 S.Ct. at 2093.

In the light of the foregoing, we cannot accept appellants' contention that section 3013 is in reality a revenue raising statute. "[R]evenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidently create revenue." *Twin City Bank v. Nebeker,* 167 U.S. 196, 202–03, 17 S.Ct. 766, 768–69, 42 L.Ed. 134 (1897); *see also Millard v. Roberts,* 202 U.S. 429, 436–37, 26 S.Ct. 674, 675, 50 L.Ed. 1090 (1906); *United States v. Norton,* 91 U.S. 566, 569, 23 L.Ed. 454 (1876). "[I]f an exaction be clearly a penalty it cannot be converted into a tax by the simple expedient of calling it such." *United States v. LaFranca,* 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931); *see also United States v. Con-*

*stantine,* 296 U.S. 287, 294, 56 S.Ct. 223, 80 L.Ed. 233 (1935). Indeed, Congress did not even call section 3013 a "revenue bill" or "tax". In S.Rep. No. 497, 98th Cong., 2d Sess., *reprinted in,* 1984 U.S.Code Cong. & Admin.News 3182 at 3607, *et seq.,* the Senate Committee on the Judiciary referred to "special assessments" as that term was used in S. 2423, the originally proposed Victims of Crime Assistance Act, as "Penalty Assessment Fines", and "penalty assessment fees". *Id.* 1984 U.S.Code Cong. & Admin.News at 3619.

Section 3013 imposes a penalty upon each convicted defendant, a penalty that varies with the seriousness of the crime of which the defendant has been convicted. It also provides that assessments should be collected in the same manner as criminal fines. The fact that the assessment proceeds are deposited in a Crime Victims Fund from which grants will be made to compensate and assist victims of crime, does not in any way alter the punitive effect of the assessments upon those from whom payment is exacted. The statute should not be so construed as to impose upon district court judges the unjudicial task of assessing taxes.

Appellants rely on the provision of the Act that if the total amount in the Fund exceeds $100 million (to be increased to $150 million by 1992) the excess would be deposited in the general fund of the Treasury. 42 U.S.C. § 10601(c). This, they say, indicates that Congress refused to place any ultimate limitation on the use of the funds and that therefore the primary purpose of the bill was general revenue raising. This argument overlooks the unlikelihood that special assessments in increments of $200 or less will outstrip disbursements from the Crime Victims Fund to the extent of $100 million in the foreseeable future. Clearly Congress did not think so. *See United States v. Michaels,* 706 F.Supp. 699, 702 (D.Minn.1989).

Appellants also rely heavily on the Ninth Circuit's decision in *United States v. Munoz–Flores,* 863 F.2d 654 (9th Cir.1988), which held the section 3013 assessment to be unconstitutional. With all due respect

to that eminent Circuit, we believe our decision in *United States v. Pagan, supra,* 785 F.2d at 381, points in the opposite direction. Referring to the section 3013 assessment, we said:

> As the *Bearden* Court [*Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) ] made plain, "[a] defendant's poverty in no way immunizes him from punishment.... '[N]othing we now hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law.' " ... Thus, the imposition of assessments on an indigent, per se, does not offend the Constitution.

We also find more persuasive the reasoning on this point of the Tenth Circuit in *United States v. Mayberry,* 774 F.2d 1018, 1021–22 (10th Cir.1985), the Fourth Circuit in *United States v. King,* 824 F.2d 313, 316–17 (4th Cir.1987), and the Fifth Circuit in *United States v. Davis,* 845 F.2d 94, 96–97 & n. 2 (5th Cir.1988). *See also* general discussion in *United States v. Robertson,* 638 F.Supp. 1202, 1204–08 & n. 12 (E.D.Va.1986).

For all the foregoing reasons, the judgments of the district courts are AFFIRMED.