**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Edward ASHBURN,
Defendant–Appellant.**

**No. 89–3227.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1989.

Decided Sept. 7, 1989.

---

* The Honorable John W. Potter, U.S. District Judge for the Northern District of Ohio, sitting by designation.

Dale Ann Goldberg (argued), Office of the U.S. Atty., Dayton, Ohio, for U.S., plaintiff-appellee.

Frederick L. Baker (argued), Westerville, Ohio, for James Edward Ashburn, defendant-appellant.

Before MERRITT and KENNEDY, Circuit Judges, and WALINSKI, Senior District Judge.*

KENNEDY, Circuit Judge.

Following his conviction on firearms charges, defendant James Edward Ashburn was sentenced to a prison term and ordered to pay a special assessment of fifty dollars pursuant to 18 U.S.C. § 3013. Defendant contends that section 3013 violates the Origination Clause of the United States Constitution, as it was introduced in the Senate. Because we conclude that section 3013 is not a revenue measure, we reject defendant's constitutional challenge.

The Origination Clause provides:

All Bills for raising Revenue shall originate in the House of Representatives;

but the Senate may propose or concur with Amendments as on other Bills.

U.S. Const. art. I, § 7, cl. 1. This clause traditionally has received a narrow construction. It "[h]as been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes, which incidentally create revenue." *United States v. Norton*, 91 U.S. (23 Wall.) 566, 569, 23 L.Ed. 454, 455 (1876). *See also Millard v. Roberts*, 202 U.S. 429, 436, 26 S.Ct. 674, 675, 50 L.Ed. 1090, 1093 (1906); *Twin City National Bank v. Nebecker*, 167 U.S. 196, 202, 17 S.Ct. 766, 768–769, 42 L.Ed. 134, 136 (1897). *Millard v. Roberts*, for example, upheld a Senate-originated statute which provided for a property tax to finance the construction of a railway station and the elimination of grade crossings in the District of Columbia. The Court reasoned that the tax was "but means to the purposes provided by the act," not a general revenue measure. 202 U.S. at 437, 26 S.Ct. at 675. Similarly, *Norton* rejected an origination-clause challenge to the Postal Money Order Act on the ground that any income generated was incidental to the act's purposes. The *Norton* Court agreed with Justice Story's definition of "revenue laws" as measures " 'made for the direct and avowed purpose of creating revenue or public funds for the service of the Government.' " 91 U.S. (23 Wall.) at 569 (citation omitted).

Judicial opinion as to the proper application of these principles to section 3013 is split. The Ninth Circuit has concluded that section 3013 violates the Origination Clause because it is a revenue bill which originated in the Senate. *United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir.1988); *see also United States v. Hagen*, 711 F.Supp. 879 (S.D.Tex.1989) (following *Munoz–Flores*). Several other courts have rejected the Ninth Circuit's analysis, finding either that section 3013 is not a revenue measure [1] or that the provision actually

---

* The Honorable Nicholas J. Walinski, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1. *See, e.g., United States v. Greene*, 709 F.Supp. 636 (E.D.Pa.1989); *United States v. McDonough*, 706 F.Supp. 692 (D.Minn.1989); *United States v. Michaels*, 706 F.Supp. 699 (D.Minn.1989); *Unit-*

originated in the House.[2]

We conclude that section 3013 is not a revenue law within the meaning of the Origination Clause.[3] The revenue raised by the provision is merely incidental; it is a means to accomplish the twin goals of section 3013—to penalize the offender according to his degree of culpability and to finance the victims assistance fund.

The text of section 3013 suggests that it is in essence a penalty, not a tax. First, the amount of the special assessment increases with the severity of the crime. 18 U.S.C. § 3013(a).[4] Second, the statute provides that "[s]uch amount so assessed shall be collected in the manner that fines are collected in criminal cases." 18 U.S.C. § 3013(b). Further, several courts have held, in another context, that section 3013 is "penal in nature." *See, e.g., United States v. Mayberry,* 774 F.2d 1018, 1021 (10th Cir.1985); *but cf. United States v. Donaldson,* 797 F.2d 125, 127 (3d Cir.1986) (purpose of special assessment is not penal but to fund victim compensation programs). The textual inference that special assessments are penal is reinforced by the fact that 42 U.S.C. § 10601(b)(2)—which established the Crime Victims Fund—refers to the assessments collected under section 3013 as "penalty assessments."

Even if special assessments are not deemed fines or penalties, section 3013 passes muster under the Origination Clause because the assessments "imposed are but means to the purposes provided by the act"[5]—the creation of a victims assistance fund. The Crime Victims Assistance Act provides that all "penalty assessments collected under section 3013 of title 18" shall be deposited in the Crime Victims Fund. 42 U.S.C. § 10601(b).[6] The Senate Judiciary Committee reported:

> The purpose of imposing nominal assessment fees is to generate needed income to offset the cost of the [victims aid program] authorized under S. 2423. Although substantial amounts will not result, these additional amounts will be helpful in financing the program and will constitute new income for the Federal government.

S.Rep. No. 497, 98th Cong. 2d Sess. 13–14 (1984), *reprinted in,* 1984 U.S.Code Cong. and Admin.News 3607, 3619–20.

The Ninth Circuit conceded that if the assessments were collected only to fund victims assistance programs, section 3013 "might well have passed constitutional muster." *Munoz–Flores,* 863 F.2d at 658. However, the Ninth Circuit reasoned that the Judiciary Committee's reference to "new income for the Federal government" indicates that the assessments were also intended to provide general revenues. *Id.* at 659. Our review of the legislative history leads us to a different conclusion. In

---

ed States v. Ramos, 624 F.Supp. 970 (S.D.N.Y. 1985); *United States v. Hines,* No. 88 Cr. 739 (MBM), 1989 WL 16565, 1989 U.S.Dist.LEXIS 1681 (S.D.N.Y. Feb. 22, 1989).

**2.** *United States v. Clark,* 711 F.Supp. 736 (S.D.N.Y.1989). *United States v. Madison,* 712 F.Supp. 1379 (W.D.Wis.1989), suggested that section 3013 could be upheld on either ground.

**3.** We shall assume *arguendo* that the measure originated in the Senate.

**4.** Section 3013(a) provides:
(a) The court shall assess on any person convicted of an offense against the United States—
(1) in the case of a misdemeanor—
(A) the amount of $25 if the defendant is an individual; and
(B) the amount of $100 if the defendant is a person other than an individual; and

(2) in the case of a felony—
(A) the amount of $50 if the defendant is an individual; and
(B) the amount of $200 if the defendant is a person other than an individual.

**5.** *Millard,* 202 U.S. at 437, 26 S.Ct. at 675.

**6.** While 42 U.S.C. § 10601(c) places a ceiling on the fund, after which assessments would be diverted to general revenue, Congress did not anticipate that this limit would be reached. *See* S.Rep. No. 497, 98th Cong.2d Sess. 21 (1984), *reprinted in,* 1984 U.S.Code Cong. and Admin. News 3182, 3607, 3627. Moreover, the fact that a bill might produce income for the federal government does not necessarily mean that it is a revenue measure within the meaning of the Origination Clause. *See, e.g., Norton,* 91 U.S. (23 Wall) at 568 (postal money-order act not a revenue law although it might generate receipts "in excess of its expenditures").

**904**

discussing the Crime Victims Assistance Act, the Senate Report observed:

> Because of concern among Members about spending increases, the reported bill increases fines available for deposit.... New sources of revenue in the form of blanket 'penalty assessment fees' and public donations are authorized.

S.Rep. No. 497, 98th Cong. 2d Sess. 5 (1984), *reprinted in*, 1984 U.S.Code Cong. and Admin.News 3607, 3611. It appears obvious that the reference to "new revenues" was simply intended to reassure Members that the victims fund would be supported by assessments and fines, and would not increase the budget deficit by drawing on general revenues.

We conclude that section 3013 does not run afoul of the Origination Clause. The Clause applies only to revenue bills "in the strict sense of the word," 202 U.S. at 436, 26 S.Ct. at 675, and section 3013 is not a general revenue measure. The penalty assessments established by the statute are analogous to fines, not taxes, and any revenue collected is merely incidental to the act's purpose of funding victim assistance programs.

AFFIRMED.