**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Roland P. HERRADA,**
**Defendant–Appellant.**

No. 89–2324.

United States Court of Appeals,
Fifth Circuit.

Oct. 18, 1989.

Thomas S. Berg, Asst. Federal Public Defender, Roland H. Dahlin, II, Federal Public Defender, Houston, Tex., for defendant-appellant.

Frances H. Stacy, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Gary L. Cobe, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before KING, JOLLY, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

The appellant, Roland P. Herrada, appeals the district court's denial of his motion to correct the special assessment of $100 imposed upon him pursuant to 18 U.S.C. § 3013 after his conviction on two counts of unlawful possession of a firearm by a convicted felon, 18 U.S.C.App. (1982 Ed.) § 1202(a)(1). Herrada contends that 18 U.S.C. § 3013 is unconstitutional because it originated in the Senate and had as its principal purpose the raising of revenue and thus violates of the Origination Clause of the United States Constitution. That clause provides that "all Bills for raising Revenue shall originate in the House of Representatives, but the Senate may propose or concur with Amendments as on other Bills." U.S. Const., Art. 1, § 7, cl. 1. Because we find that 18 U.S.C. § 3013 is not a "revenue raising" bill for purposes of the Origination Clause, we pretermit determining whether § 3013 raises a nonjusticiable political question [1] and whether the bill that became § 3013 originated in the House of Representatives or in the Senate.

The Supreme Court has spoken three times on the meaning of the term "Bills for raising Revenue" in the Origination Clause. In *United States v. Norton*, 91 U.S. (1 Otto) 566, 23 L.Ed. 454 (1875), the Court held that the Act to Establish a Postal Money Order System, 13 Stat. at L. 76, was not revenue raising for purposes of the Origination Clause. The Act provided that "[a]ll moneys received from the sale of money orders, all fees received for selling them, and all moneys transferred in administering the Act, are 'to be deemed and taken to be money in the Treasury of the United States.' " 91 U.S. at 454. The *Nor-*

---

**1.** In *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962), the Supreme Court set forth the circumstances in which an issue is inappropriate for judicial resolution; a political question may arise when any one of the following circumstances is present:

> ... a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Accord, INS v. Chada,* 462 U.S. 919, 941, 103 S.Ct. 2764, 2779, 77 L.Ed.2d 317 (1983).

In *Texas Association of Concerned Taxpayers, Inc. v. United States,* 772 F.2d 163 (5th Cir.1985), *cert. denied,* 476 U.S. 1151, 106 S.Ct. 2265, 90 L.Ed.2d 710 (1986), we addressed a challenge to the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324 (TEFRA), based on the Origination Clause. The issue was whether the Origination Clause's phrase "Bills for raising Revenue" applies to all bills relating to revenue or only bills which *increase* revenue. We held that the issue presented a nonjusticiable political question. Our decision rested on the fact that the House "spent considerable time debating the application of the clause to the circumstances before it." 772 F.2d at 166. Thus, we held:

> [W]here, as here, a constitutional provision governing the mode of internal operation of Congress contains a word or phrase susceptible of more than one meaning, and *Congress has given that word or phrase an interpretation* consistent with the limitations on authority contained in the provisions, the courts should not intrude into the deliberative processes of Congress to modify that judgment. Such an inquiry poses a nonjusticiable political question. *Id.* at 167. (emphasis supplied)

*Texas Association* implicated the fourth *Baker v. Carr* factor—judicial determination of the issue presented might express a lack of respect due the Congress. This resulted because Congress extensively debated whether the passage of TEFRA adhered to the Origination Clause. However, in the instant case, Congress did not consider whether the enactment of 18 U.S.C. § 3013 comported with the Origination Clause.

*ton* court accepted the Congressional purpose declared at the outset of the first section of the Postal Act: "To promote public convenience, and to insure greater security in the transmission of money through the United States mails."

In *Twin City Bank of New Brighton v. Nebeker,* 167 U.S. 196, 17 S.Ct. 766, 42 L.Ed. 134 (1897), the Court held that an Act of Congress providing a national currency secured by a pledge of United States bonds, to meet the expenses of executing the law, and imposing a tax on the average amount of the notes in circulation of banking associations organized under the statutes was not a revenue bill under the Origination Clause. Noting that the "main purpose that Congress had in view was to provide a national currency based upon United States bonds" and that the "tax was a means for effectually accomplishing" that purpose, the Court found no purpose by the Act to raise revenue to be applied in meeting the expenses or obligations of the government. *Id.* at 203, 17 S.Ct. at 769.

In *Millard v. Roberts,* 202 U.S. 429, 26 S.Ct. 674, 50 L.Ed. 1090 (1906), the Court held that a bill providing for the taxation of property in the District of Columbia to provide funds for adequate railroad terminal facilities in the District of Columbia was not a bill to raise revenue. The Court noted that "[w]hatever taxes are imposed are but means to the purposes provided by the act [i.e., to provide railroad terminal facilities]." *Id.* at 437, 26 S.Ct. at 675.

Each of these decisions cites with approval the opinion of Mr. Justice Story "that the practical construction of the Constitution, and the history of the origin of the constitutional provision in question, proves that revenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes, which may incidentally create revenue." 1 Story, Const. § 880. *See Norton,* 91 U.S. at 569; *Twin City,* 167 U.S. at 203, 17 S.Ct. at 769; *Millard,* 202 U.S. at 436, 26 S.Ct. at 675.

■ At the outset we acknowledge the Supreme Court's directive that a statute is to be construed to avoid raising doubts as to its constitutionality. *St. Martin Evan-*

*gelical Lutheran Church v. South Dakota,* 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981). 18 U.S.C. § 3013 provides:

Special assessment on convicted persons

(a) The court shall assess on any person convicted of an offense against the United States—

(1) in the case of an infraction or a misdemeanor;

(A) if the defendant is an individual

(i) the amount of $5 in the case of an infraction or a class C misdemeanor;

(ii) the amount of $10 in the case of a class B misdemeanor; and

(iii) the amount of $25 in the case of a class A misdemeanor; and

(B) if the defendant is a person other than an individual—

(i) the amount of $25 in the case of an infraction or a class C misdemeanor;

(ii) the amount of $50 in the case of a class B misdemeanor; and

(iii) the amount of $125 in the case of a class A misdemeanor

(2) in the case of a felony—

(A) the amount of $50 if the defendant is an individual; and

(B) the amount of $200 if the defendant is a person other than an individual.

(b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.

(c) The obligation to pay an assessment ceases five years after the date of the judgment. This subsection shall apply to all assessments irrespective of the date of imposition.

(d) For the purposes of this section, an offense under section 13 of this title is an offense against the United States.

The bare language of the statute does not reveal the purposes for the assessment. Thus the legislative history of the Act of which § 3013 was a part may prove instructive.

Section 3013 was part of a legislative package entitled Victims of Crime Act of 1984, which in turn was part of the Com-

prehensive Crime Control Act of 1984. The report of the Senate Committee on the Judiciary states that the purpose of § 3013 was:

> to generate needed income to offset the cost of the [victim assistance] programs authorized under S. 2423. Although substantial amounts will not result, the additional amounts will be helpful in financing the program and will constitute new income for the Federal government.

S.Rep. No. 497, 98th Cong., 2d Sess. 13–14 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3607, 3619–20. The accompanying report of the Senate Committee on the Judiciary declared that the purpose of the Victims of Crime Act was

> to provide limited Federal Funding to the States, with minimal bureaucratic "strings attached," for direct compensation and service programs to assist victims of crime, including victims of Federal crime. In addition, it provides funds to improve Federal efforts which assist crime victims, and establishes a Federal Victim of Crime Advisory Committee. A Federal Victim Assistance Administrator in the Department of Justice will coordinate Federal efforts.

S.Rep. No. 497, 98th Cong., 2d Sess. 1 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3607. Section 3013 was but a subsidiary element of a comprehensive Congressional scheme aimed at aiding the victims of crime. The purpose of the Act was not the prohibited purpose of raising revenue "to be applied in meeting the expenses or obligations of the government." *Twin City,* 167 U.S. at 203, 17 S.Ct. at 769.[2]

■ Indeed, like the tax to fund a postal money order system in *Norton,* the tax imposed in *Twin City* to support the national currency, and the tax to fund the building of railroad terminals in the District of Columbia in *Millard,* the special assessment imposed by 18 U.S.C. § 3013 does not levy taxes in the strict sense of the word. In each case the Act at issue had as its primary purpose something other than the raising of general funds for the United States Treasury. That an Act may "incidentally create revenue" does not therefore render it a revenue raising bill for the purposes of the Origination Clause. 1 Story, Const. § 880; *Norton,* 91 U.S. at 455; *Twin City,* 167 U.S. at 202, 17 S.Ct. at 769; *Millard,* 202 U.S. at 436, 26 S.Ct. at 675.

■ In accordance with congressional intent, monies collected by way of the special assessment are used to fund the Crime Victims Assistance Fund, whereby the federal government provides financial assistance to victims of crime through qualifying state victims assistance funds. 42 U.S.C. §§ 10601(b)(2), 10602; *United States v. Davis,* 845 F.2d 94 (5th Cir.1988). 18 U.S.C. § 3013 simply is not a bill for raising revenue subject to the constraints of the Origination Clause.

Because we believe the Supreme Court precedents outlined above mandate our finding that 18 U.S.C. § 3013 does not violate the Origination Clause, we respectfully disagree with the opinion of our sister circuit in *United States v. Munoz–Flores,* 863

---

**2.** Several other circuits have recently held that § 3013 is not revenue raising for purposes of the Origination Clause. *See United States v. Griffin,* 884 F.2d 655 (2d Cir.1989), *United States v. Ashburn,* 884 F.2d 901 (6th Cir.1989), and *United States v. Simpson,* 885 F.2d 36 (3d Cir. 1989). Several district courts have also held that § 3013 is not a bill for raising revenue. *See United States v. Madison,* 712 F.Supp. 1379 (W.D.Wis.1989); *United States v. Greene,* 709 F.Supp. 636 (E.D.Pa.1989); *United States v. Michaels,* 706 F.Supp. 699 (D.Minn.1989); *United States v. McDonough,* 706 F.Supp. 692 (D.Minn. 1989); *United States v. Ramos,* 624 F.Supp. 970 (S.D.N.Y.1985). *But see United States v. Clark,* 711 F.Supp. 736 (S.D.N.Y.1989) (although the primary purpose of § 3013 is to raise revenue, it

permissibly originated in the House of Representatives); *United States v. Hagen,* 711 F.Supp. 879 (S.D.Tex.1989) (§ 3013 is a tax on crooks.) Several circuits have held that the purpose of § 3013 is penal and not revenue raising for the purposes of the Assimilative Crimes Act. *See United States v. Davis,* 845 F.2d 94 (5th Cir. 1988); *United States v. Smith,* 818 F.2d 687 (9th Cir.1987); *United States v. Mayberry,* 774 F.2d 1018 (10th Cir.1985). Indeed, the Supreme Court has found the imposition of cumulative special assessments to preclude application of the concurrent sentence doctrine because the defendant's liability to pay the total depends on the validity of each of his convictions. *Ray v. United States,* 481 U.S. 736, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987).

F.2d 654 (9th Cir.1988), *cert. granted,* —— U.S. ——, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989). The *Munoz–Flores* court analyzed § 3013 in isolation and failed to follow the methodology dictated by *Norton, Twin City,* and *Millard.* Those cases instruct us to consider the overarching purpose of an Act when one of its provisions is subject to an Origination Clause challenge. Accordingly, the district court's denial of Herrada's motion to correct the special assessment is AFFIRMED.