**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mitchell KING, Defendant–Appellant.**

**No. 89–3037.**

United States Court of Appeals, Tenth Circuit.

Dec. 12, 1989.

Charles D. Anderson, Federal Public Defender, and David J. Phillips, Asst. Federal Public Defender, D. Kan., Kansas City, Kan., for defendant-appellant.

Benjamin L. Burgess, Jr., U.S. Atty., and Richard L. Hathaway, Asst. U.S. Atty., D. Kan., Topeka, Kan., for plaintiff-appellee.

Before LOGAN, TACHA and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Mitchell King pleaded guilty to assault with a dangerous weapon with intent to do bodily harm, 18 U.S.C. § 113(c). Pursuant to 18 U.S.C. section 3013, the district court ordered King to pay a "special assessment" of $50. Section 3013 requires the district court to assess $50 against any individual convicted of a felony, 18 U.S.C. § 3013(a)(2)(A), or a lesser amount if the individual is convicted of a misdemeanor or infraction, *id.* § 3013(a)(1). In the latter case, the amount of the assessment varies with the class of the misdemeanor or infraction. *Id.* All assessments "shall be collected in the manner that fines are collected in criminal cases." *Id.* § 3013(b). King objected to the imposition of the special assessment, contending that section 3013 was passed in violation of the origination clause of the federal Constitution, U.S. Const. art. I, § 7, cl. 1. The district court rejected his contention, and this appeal followed.[1] We affirm.

## I.

■ The origination clause provides that "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Const. art. I, § 7, cl. 1. The reach of the origination clause, however, is restricted. In *Twin City National Bank v. Nebecker,* 167 U.S. 196, 203, 17 S.Ct. 766, 769, 42 L.Ed. 134 (1897), the United States Supreme Court held that "revenue bills are those that levy taxes, in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue." The Court determined that the test for whether a particular bill is a revenue bill rests upon the bill's "main purpose." *Id.* Thus, where the purpose of an act is "to raise revenue to be applied in meeting the expenses or obligations of the government," *id.,* the act is a revenue measure subject to the origination clause. Where the main purpose of the act is other than raising revenue, it is not subject to challenge under the origination clause. In *Nebecker,* the Court thus determined that a bill creating a national currency that also laid a tax upon United States bonds was not a revenue bill. *Id.; see also Millard v. Roberts,* 202 U.S. 429, 26 S.Ct. 674, 50 L.Ed. 1090 (1906) (upholding act setting tax in District of Columbia for new railway terminal against origination clause challenge); *United States v. Norton,* 91 U.S. 566, 23 L.Ed. 454 (1875) (upholding Postal Money Order Act although imposing fee on purchasers). We thus analyze the main purpose of section 3013 to determine the applicability of the origination clause. We review this question of law de novo, *In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 1266 (10th Cir.1988), remembering that "federal statutes are to be construed so as to avoid serious doubts as to their constitutionality," *Communication Workers of Am. v. Beck,* 487 U.S. 735, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988), and that "the burden of showing a statute to be unconstitu-

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

tional is on the challenging party, *not* on the party defending the statute," *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 17, 108 S.Ct. 2225, 2236, 101 L.Ed.2d 1 (1988) (emphasis in original).

■ Five circuits have considered section 3013's purpose in light of origination clause challenges. Only the Ninth Circuit, in *United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir.1988), *cert. granted*, —— U.S. ——, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989), has determined that section 3013's purpose is to raise revenue, thus violating the origination clause. The Third, Fifth, and Sixth Circuits have determined that section 3013's main purpose is to fund a victim's compensation program. *See United States v. Newman*, 889 F.2d 88 (6th Cir.1989); *United States v. Herrada*, 887 F.2d 524 (5th Cir.1989); *United States v. Simpson*, 885 F.2d 36 (3d Cir.1989). The Second Circuit has determined that the section's main purpose is to punish offenders. *See United States v. Griffin*, 884 F.2d 655 (2d Cir. 1989). The Sixth Circuit has also held that section 3013's twin purposes are punishment and victim's compensation. *See United States v. Ashburn*, 884 F.2d 901 (6th Cir.1989). Thus every circuit except the Ninth that has considered this issue has held that section 3013 survives origination clause challenge. In *United States v. Mayberry*, 774 F.2d 1018 (10th Cir.1985), we reviewed section 3013's purpose relative to the Assimilative Crimes Act, 18 U.S.C. § 13, and determined that the section's purpose was punitive. We adhere to our earlier position and agree with the Second, Third, Fifth and Sixth Circuits that section 3013 is not a revenue measure subject to the origination clause.

In *Mayberry*, we examined the relationship of section 3013 to the Assimilative Crimes Act, which fills gaps in federal criminal law by adopting state criminal law for federal enclaves. When the Assimilative Crimes Act is triggered, it permits punishment only in the manner that the same offense would have been punishable under applicable state law. We concluded that section 3013 could not be applied under the Assimilative Crimes Act because section 3013 was punitive, placing an additional burden on convicted persons not present under state law. In finding this punitive intent, we noted that the section on its face imposes higher penalties on felons than misdemeanants, a factor suggesting punitive, rather than revenue, intentions. We also noted that the statute required the assessments to be collected like criminal fines. Turning to the legislative history, we noted that the Senate Report stated that revenue gained through the assessments would be insubstantial, *id.* at 1021 (quoting S.Rep. No. 497, 98th Cong., 2d Sess. 13–14) [hereinafter Senate Report], *reprinted in* 1984 U.S.Code Cong. & Admin News 3182, 3607, 3619–20, and referred to the special assessments as "penalty assessment fines," "penalty assessment fees," "penalty fee[s]," and "penalties," *id.* (quoting Senate Report at 13, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3619). We thus held that Congress intended to treat the special assessments as punishment.

The Ninth Circuit rejected this reasoning in *Munoz–Flores*, 863 F.2d 654. The court refused to draw any inferences of punishment from the statutory language, describing the language as "ambiguous", *id.* at 658, and finding that the reference to collecting special assessments like criminal fines "may be interpreted as a purely procedural requirement," *id.* The court also found the lack of an explicit limitation on disposition of special assessment funds important. The court then seized upon the following statement in the section-by-section analysis:

> The purpose of imposing nominal assessment fees is to generate needed income to offset the cost of the [victim's assistance fund] authorized under S. 2423. Although substantial amounts will not result, these additional amounts will be helpful in financing the program *and will constitute new income for the Federal government.*

*Id.* (emphasis in *Munoz–Flores*) (quoting Senate Report at 13–14, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3619–20). The court found that the emphasized lan-

guage showed that "Congress contemplated that the revenue might be used as general federal revenue." *Id.* at 659 (footnote omitted). The court thus concluded "that for purposes of the origination clause the primary purpose of the special assessment was to raise revenue, not to finance state victim assistance programs or to punish offenders." *Id.* at 660.

We disagree with the Ninth Circuit's analysis. The quoted fragment from the legislative history explicitly limits special assessments to "financing the program" of victims assistance and compensation. The "new income" language may be read more reasonably not as a general invitation to fill the government's coffers with "special assessment booty," *Simpson,* 885 F.2d at 42, but rather as a notation that Congress would not have to divert monies from other programs. Moreover, we agree with the Third Circuit that the proper scope for analyzing section 3013's legislative history is the statute as a whole, and not the section in isolation. *See Simpson,* 885 F.2d at 41 (analyzing whole of Victims of Crime Assistance Act). Section 3013 was passed as part of the Victims of Crime Assistance Act. Although the Act does not explicitly state a purpose, the Senate Report explained that

> The purpose of S. 2423, the Victims of Crime Assistance Act of 1984, ... is to provide limited Federal funding to the States, with minimal bureaucratic "strings attached", for direct compensation and service programs to assist victims of crime, including victims of Federal crime.

Senate Report at 1, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3607. The Victims of Crime Assistance Act as a whole contains numerous restrictions on how program funds can be spent. *See* 42 U.S.C. § 10603(d)(2) (listing restrictions). We reject the Ninth Circuit's conclusion that the emphasized language in the section-by-section analysis requires a finding of revenue purpose. When taken as a whole, we find that the Victims of Crime Act clearly shows a main purpose of assisting victims of local, state, and federal crime, not raising revenue to meet the general obligations

of the government. Section 3013 is merely a part of this larger statutory scheme. Viewed in this context, the Victims of Crime Act and the special assessments authorized in section 3013 bear a substantial similarity to the statutes approved by the Supreme Court in *Nebecker,* 167 U.S. 196, 17 S.Ct. 766, 42 L.Ed.2d 134 (bill creating currency funded by taxing U.S. bonds), *Millard,* 202 U.S. 429, 26 S.Ct. 674, 50 L.Ed. 1090 (taxing property in District of Columbia for new railway station), and *Norton,* 91 U.S. 566, 23 L.Ed. 454 (upholding Postal Money Order Act although imposing fees on purchasers).

We also adhere to our determination in *Mayberry,* 774 F.2d 1018, that the other major purpose of section 3013 is punitive, not revenue-raising, in nature. We find the Ninth Circuit's characterization of the section's provisions as a possible "exercise of Congress' power to tax under art. I, § 8 of the Constitution," *Munoz–Flores,* 863 F.2d at 659, strained and difficult to reconcile with the Supreme Court's admonition that statutes are to be construed to save their constitutionality when "fairly possible," *Communications Workers of Am. v. Beck,* 487 U.S. at ——, 108 S.Ct. at 2657. As the Second Circuit observed in *Griffin,* "if an exaction be clearly a penalty it cannot be converted into a tax by the simple expedient of calling it such." 884 F.2d at 656 (quoting *United States v. LaFranca,* 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931)). Section 3013 assesses amounts in proportion to the seriousness of the offense and provides that the assessments shall be collected like criminal fines. *E.g.,* 18 U.S.C. § 3013(a) & (b). Congress, in the Senate Report, characterized the special assessments as "penalty assessment fines," "penalty assessment fees," and "penalties." Senate Report at 13, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3619. We find these factors, as we did before in *Mayberry,* indicative of a punitive, not revenue-raising, purpose.

## II.

We find that section 3013's main purposes are to raise funds to support local,

state, and federal victims assistance and compensation programs and to punish offenders. Because we determine that section 3013 thus does not qualify as a revenue bill under the test in *Nebecker*, 167 U.S. at 203, 17 S.Ct. at 769, we hold that section 3013 is not subject to the provisions of the origination clause.[2] The judgment of the district court is AFFIRMED.

---

**2.** Because we are satisfied that the section was not enacted for the purpose of raising revenue, as that term is used in the origination clause, we do not address the question of section 3013's origin.