**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rodney Earl WILSON, Defendant–Appellant.**

**No. 89–5397.**

United States Court of Appeals, Eleventh Circuit.

May 21, 1990.

Michael J. O'Kane, pro bono, Ft. Lauderdale, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Donna Bucella, Harriett R. Galvin, Linda Collins–Hertz, David I. Mellinger, Asst. U.S. Attys., Ft. Lauderdale, Fla., for plaintiff-appellee.

Before FAY, Circuit Judge, RONEY *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

PITTMAN, Senior District Judge:

Defendant Rodney Wilson appeals the sentence imposed upon him under the Federal Sentencing Guidelines. Wilson contends that the district court erred in using his DUI offenses in calculating his criminal history category. Wilson also contends that the special assessment levied against him is unconstitutional. We affirm.

Defendant Wilson was arrested, along with three other defendants, at the Holiday Inn in North Miami Beach, Florida on January 26, 1988, after purchasing approximately five kilograms of cocaine from an undercover FBI agent. Wilson, who had put up enough money to purchase two kilos for himself, was also acting as a representative for others who desired to purchase cocaine.

On October 17, 1988, Wilson plead guilty to count two, of a two-count indictment, charging possession with intent to distribute at least five kilos of cocaine. The defendant, who contested the amount of cocaine involved in the transaction, was subsequently allowed to withdraw his plea, and trial was scheduled for March 14, 1989. On March 15, 1989, following voir dire, but before any witnesses were sworn, Wilson pled guilty to conspiracy and to possession with intent to distribute less than five kilos of cocaine.

On April 19, 1989, at a sentencing hearing, Wilson again contested the amount of cocaine involved in the transaction relating to this case. The hearing was continued until April 21, 1989, at which time the court determined that because there was a sufficient amount of doubt regarding Wilson's possessory interest in the additional 2.9 kilograms of cocaine that he purchased for others, Wilson would be sentenced on the conspiracy and possession charges using a weight of only two kilograms. As a result,

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

defendant's base level was determined to be 28.

The court also considered adjustments for defendant's role in the offense and acceptance of responsibility. Because the role in the offense factor increased the offense level by two points, and the acceptance of responsibility decreased it by two, the adjustments cancelled out one another. Thus, the offense level remained at 28.[1]

■ In assessing the defendant's criminal history category, the court considered the following factors: two prior drug convictions, one a felony (3 points), and one a misdemeanor (1 point); a probation violation (2 points), and three DUI offenses (3 points).[2] The court thus concluded that Wilson would be sentenced at offense level 28, criminal history category IV, with a guideline range of 110–137 months. Wilson was sentenced to 132 months imprisonment on each count, to be served concurrently. The court also imposed a five year period of supervised release after the completion of the sentence. In addition, the court imposed a $100 special assessment pursuant to 18 U.S.C. § 3013.

The defendant has raised a number of arguments regarding the use of his DUI convictions in determining his criminal history category, but only two merit discussion. Wilson contends that the Sentencing Commission's treatment of DUI offenses is arbitrary and capricious in light of the Supreme Court's decision in *Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). According to the defendant, under both the 1987 and 1988 versions of the Sentencing Guidelines, traffic or petty offenses are not to be used in calculating an individual's criminal history category, and DUIs are not treated as petty offenses. However, defendant states that the Supreme Court in *Blanton* held that DUIs may in fact constitute petty offenses; and claims that, in not considering the impact of the *Blanton* decision on the guidelines, the Sentencing Commission has acted arbitrary and capricious.

■ Under the Sentencing Guidelines, minor traffic violations are specifically excluded from the factors the court can consider in its criminal history calculations. DUI convictions however, are not deemed minor traffic infractions within the meaning of U.S.S.G. § 4A1.2(c), Comment. (n. 5).

Despite the defendant's arguments to the contrary, the Supreme Court's holding in *Blanton* did nothing to necessitate a reexamination of this section. In *Blanton*, the Supreme Court examined the narrow issue of whether there is a constitutional right to a trial by jury for persons charged under Nevada law with driving under the influence of alcohol. *Blanton*, —— U.S. at ——, 109 S.Ct. at 1289, 103 L.Ed.2d at 552. The Court held that the Sixth Amendment right to a jury trial is unavailable to persons charged with a first offense of driving under the influence of alcohol, under the Nevada Statute, which imposes a six month maximum prison term plus other nonprison penalties. In reaching its decision, the Court found that the Nevada legislature, in imposing the punishment for said offense, treated the offense as a "petty offense" as opposed to a "serious offense." The Court did not discuss, nor can its decision even be construed as discussing, the treatment of DUI offenses in the criminal history category of the Sentencing Guidelines. As a

---

1. The defendant argues that although the court rejected his contention that he was entitled to a two, three or four level reduction due to his having a minimal role in the offense, the court did not find on the record that the defendant should suffer an increase in the guideline level due to his role in the offense. Despite the defendant's contentions to the contrary, the record reflects that the court did in fact accept the recommendations of the government and the Probation Department for a two point increase for defendant's role in the offense.

2. The defendant argued on appeal that in calculating his criminal history category, the court miscounted his DUI convictions. To the extent that such an error occurred, it was harmless. According to the defendant, he has at most two DUI convictions, not three. The record reveals that the defendant was arrested five times for DUI offenses. One arrest in Virginia resulted in a conviction for reckless driving. In Florida, the defendant has two DUI convictions, and two DUI charges pending. Since discounting one of the DUI convictions will still result in the defendant being placed in Criminal History Category IV, the error was harmless.

result, any argument that the Sentencing Commission has acted arbitrary and capricious in failing to consider the *Blanton* decision, is without merit.

■ The defendant next argues that in developing the Sentencing Guidelines, the Commission chose to use a criminal history scheme that looks to the length of the prior sentence imposed, rather than the nature of the offense; yet, the Commission ignored this philosophy in its treatment of DUI offenses. Contrary to the defendant's argument, the Guidelines' treatment of DUI offenses in the criminal history category is consistent with Congress' directive to the Sentencing Commission. In 18 U.S.C. § 3553, Congress, in its directive to the Sentencing Commission, stated that sentences should be based upon both the nature and circumstances of the offense and the history and characteristics of the defendant.[3] The way that a DUI conviction is treated under the criminal history category depends in large part on whether the sentence is a misdemeanor or a felony. This is a clear indication that the length of the sentence is in fact taken into account. Moreover, to minimize the risk that a defendant's criminal history category may overrepresent the seriousness of the defendant's criminal history or the likelihood that the defendant may commit further crime, § 4A1.3 allows a defendant to introduce evidence concerning the underlying conviction so that an accurate criminal history category can be set by the sentencing court. We therefore conclude that the Commission's treatment of DUI offenses accomplishes the goals set by congress.

■ The defendant's final argument is that the $100 special assessment imposed upon him, pursuant to 18 U.S.C. § 3013, is an unconstitutional violation of the origination clause.[4] Although this issue has not been previously addressed by this circuit, at least seven other circuits have considered Section 3013's purpose in light of origination challenges. *United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir.1988), *cert. granted*, —— U.S. ——, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989); *United States v. Newman*, 889 F.2d 88 (6th Cir.1989); *United States v. Herrada*, 887 F.2d 524 (5th Cir.1989); *United States v. Simpson*, 885 F.2d 36 (3d Cir.1989); *United States v. Griffin*, 884 F.2d 655 (2nd Cir.1989); *United States v. King*, 891 F.2d 780 (10th Cir. 1989); *United States v. Tholl*, 895 F.2d 1178 (7th Cir.1990). Only the Ninth Circuit, in *United States v. Munoz–Flores*, 863 F.2d 654, has determined that Section 3013's purpose is to raise revenue, thus violating the origination clause. We decline to follow the opinion expressed in *United States v. Munoz–Flores*, and join the majority of circuits in holding that 18 U.S.C. § 3013 does not violate the origination clause.

The Tenth Circuit in *United States v. King*, provided an excellent analysis of the origination clause. The court stated that:

---

3. A DUI is a drug-related offense.

4. 18 U.S.C. § 3013 provides:
   Special assessment on convicted persons
   (a) The court shall assess on any person convicted of an offense against the United States—
   (1) in the case of an infraction or a misdemeanor;
   (A) if the defendant is an individual
   (i) the amount of $5 in the case of an infraction or a class C misdemeanor;
   (ii) the amount of $10 in the case of a class B misdemeanor; and
   (iii) the amount of $25 in the case of a class A misdemeanor; and
   (B) if the defendant is a person other than an individual—
   (i) the amount of $25 in the case of an infraction or a class C misdemeanor;

   (ii) the amount of $50 in the case of a class B misdemeanor; and
   (iii) the amount of $125 in the case of a class A misdemeanor
   (2) in the case of a felony—
   (A) the amount of $50 if the defendant is an individual; and
   (B) the amount of $200 if the defendant is a person other than an individual.
   (b) Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.
   (c) The obligation to pay an assessment ceases five years after the date of the judgment. This section shall apply to all assessments irrespective of the date of imposition.
   (d) For the purposes of this section, an offense under section 13 of this title is an offense against the United States.

The origination clause provides that 'All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills.' U.S. Const. art. I, § 7, cl. 1. The reach of the origination clause, however, is restricted. In *Twin City National Bank v. Nebecker*, 167 U.S. 196 [17 S.Ct. 766, 42 L.Ed. 134] (1897), the United States Supreme Court held that 'revenue bills are those that levy taxes, in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue.' The court determined that the test for whether a particular bill is a revenue bill rests upon the bill's 'main purpose.' *Id.* Thus, where the purpose of an act is 'to raise revenue to be applied in in meeting the expenses or obligations of the government,' *Id.*, the act is a revenue measure subject to the origination clause. Where the main purpose of the act is other than raising revenue, it is not subject to challenge under the the origination clause. In *Nebecker*, the court court thus determined that a bill creating a national currency that also laid a tax upon United States bonds was not a revenue bill. *Id.; see also Millard v. Roberts*, 202 U.S. 429 [26 S.Ct. 674, 50 L.Ed. 1090] (1906) (upholding act setting tax in District of Columbia for new railway terminal against origination clause challenge); *United States v. Norton*, 91 U.S. 566 [23 L.Ed. 454] (1875) (upholding Postal Money Order Act although imposing fee on purchasers);

*King*, 891 F.2d at 781.

Section 3013 was part of a legislative package entitled Victims of Crime Act of 1984, which in turn was part of the Comprehensive Crime Control Act of 1984. There is nothing on the face of § 3013 which reveals the purpose for the assessment. The report of the Senate Committee on the Judiciary states that the purpose of § 3013 was:

at to generate needed income to offset the cost of the [victim assistance] programs authorized under S.2423. Although substantial amounts will not result, the additional amounts will be helpful in financing the program and will constitute new income for the Federal government.

S.Rep. No. 497, 98th Cong., 2d Sess. 13–14 (1984), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3607, 3619–20. The accompanying report of the Senate Committee on the Judiciary declared:

at the purpose of the Victims of Crime Act was to provide limited Federal Funding to the States, with minimal bureaucratic 'strings attached,' for direct compensation and service programs to assist victims of crime, including victims of federal crime. In addition, it provides funds to improve Federal efforts which assist crime victims, and establishes a Federal Victim Assistance Committee. A Federal Victim Assistance Administrator in the Department of Justice will coordinate Federal efforts.

S.Rep. No. 497, 98th Cong., 2d Sess. 1 (1984), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3607.

After a close review of the Act, and its legislative history, this court concludes that the act constitutes part of a comprehensive Congressional scheme which was designed primarily to assist victims of crime. The special assessment provision is simply a means used to achieve this purpose, it is not an end in and of itself. The fact that the assessments can be used for general purposes once revenue in the crime victim fund exceeds $125 million is of no moment. If the raising of general revenue were the bill's primary purpose, then one might expect that the revenue generated initially would be deposited in the first instance into the general fund of the treasury with any amounts in excess of $125 million being used to fund victims' assistance programs. This is not the case, however. Because we find that § 3013 is not a revenue bill, the defendant's origination clause challenge must fail. Accordingly, we uphold the district court's imposition of the $100 special assessment.

AFFIRMED.