UNITED STATES of America, Appellee,

v.

Paul M. ROBINSON, Jr., Appellant.

No. 73-1654.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1973.

Decided April 11, 1974.

---

---

Paul M. Robinson, Jr., pro se.

Paul A. Scott, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

This pro se appeal by Paul M. Robinson, Jr., from his conviction of a petty offense in a United States Magistrate's court has brought to our attention some serious irregularities and deficiencies in the magistrate's procedures as well as one of the regulations [1] presently in effect at the Washington National Airport. Finding the charges and proceedings flawed in practically every aspect, we reverse the conviction.

The factual background appears to be as follows: [2]

On December 11, 1972, the appellant was issued two citations at Washington Na-

1. 14 C.F.R. § 159.71.

2. There is no transcript of the proceedings in either the magistrate's court or the district court. However, incident to Robinson's appeal to the district court, the magistrate filed a document entitled "MAGISTRATE'S STATEMENT OF THE CASE–FINDINGS OF FACT AND CONCLUSIONS OF LAW."

We assume this document was designed to comply with Rule 23(c), F.R.Crim.P. *See* United States v. Harrington, 492 F.2d 1240 (4 Cir. 1974). In any event, our statement of facts is based upon these "Findings" of the magistrate, together with the few documents filed as a part of the record on this appeal.

tional Airport by airport officer, James McRae, Jr. One charged him with the failure to comply with an officer's directions,[3] while the second charged him with "disorderly conduct—abusive language" and the legend "18–1–237" which apparently was intended to refer to Section 18.1–237 of the Virginia Code.

As a preface to his findings of fact the magistrate states that Robinson "was charged and convicted of a violation of a petty offense, Disorderly Conduct (Use of abusive language), Title 14, Code of Federal Regulations, Section 159.71." On this charge the magistrate recites the facts as follows. While issuing the traffic ticket to Robinson, Officer McRae asked for his permit and registration. When the defendant asked about the nature of the charge McRae advised that it was for failure to comply with an officer's direction and continued writing the citation. Thereupon the defendant stated that he did not have time to "fuck around court all day" and that the officer was a "common bastard for giving him the ticket." The officer testified that Robinson repeated the phrase "common bastard" on at least one more occasion, whereupon a cruiser was called and the defendant was taken to the station house. While noting that the defendant's testimony was somewhat at variance with that of the officer, the magistrate elected to accept the officer's version of the incident. In his "Conclusions of Law" the magistrate states "[t]he defendant was guilty of a violation of Title 14, Code of Federal Regulations, Section 159.71."

First of all, we find the regulatory scheme under which Robinson was charged so ambiguous and irregular that we seriously doubt it can furnish a basis for his conviction. To demonstrate the regulatory infirmity, it is necessary to review its history to some degree. The authority of the Federal Aviation Administration and its predecessor agencies to control and maintain the Washington National Airport is derived from the D.C.Code, Title 2, Section 1602 (now Title 7, Section 1302). The regulations originally promulgated by the Administrator were codified in 14 C.F. R., Part 570, and included regulations governing personal conduct at the airport which were specifically drafted by the Administrator for that purpose. It was such a specific regulation [4] which was considered and upheld by this court in Finn v. United States, 256 F.2d 304 (4 Cir. 1958).

In 1962, however, the Administrator revised the regulations by deleting Part 570 and adding a new Part 159 covering both Washington National Airport and Dulles International Airport.[5] The new Part 159 states that it is issued under the authority of D.C.Code Title 2, Section 1602 (now Title 7, Section 1302), and includes regulations covering a variety of conduct and activity incident to the operation of the airports.[6] Section 159.191 authorizes fines of not more than $500 or imprisonment for not more than six months, or both, for violations of any of the Rules prescribed in Part 159, "including any provision incorporated by reference." Section 159.71 is in-

---

3. This citation appears to have a statutory reference on its face which, however, has been penned over and obliterated. Below this, on the citation appear the words "Not Guilty." Other than this the record is devoid of any information relative to the disposition of this charge. The Government's brief states that this citation charged a violation of Title 18, U.S.Code, Section 13, assimilating Section 46.1–183 of the Code of Virginia, and that it was dismissed by the magistrate who held that this section of the Virginia Code was "informational and not a criminal charge, due to its vagueness." We

find nothing in the record to support this statement, but assume it was based upon oral information obtained from the magistrate's office.

4. Section 570.71 read in part as follows:
   "No person while on the airport or in any building located on the airport, shall
   * * * * *
   (e) Use profane or vulgar language."

5. Notice of the proposed change was published in 27 Fed.Reg. 7035, July 25, 1962.

6. The new regulations were published in 27 Fed.Reg. 9443, September 22, 1962.

cluded in "Subpart D—Rules of Conduct" and reads as follows:

"Pursuant to Section 13 of Title 18, U.S.C., and except as otherwise provided in this part, the criminal laws of Virginia relating to the following apply on the Airport: '

(a) Disorderly conduct

(b) Gambling

(c) Obscene literature

(d) Drunkenness" [7]

While the Administrator properly referred to the D.C.Code as his authority to promulgate all of the regulations in Part 159, we are at a loss to understand his purported use of the Assimilative Crimes Act of 1948 [8] in Section 159.71. Whether he intended to incorporate the pertinent Virginia criminal statutes by the general references in the regulation or was attempting some form of "selective assimilation" under 18 U.S.C. § 13 is not at all clear.[9] In any event, we find this novel and hybrid use of the Assimilative Act utterly improper. That Act was designed to assimilate the entire state criminal law into any appropriate federal enclave [10] and does not contemplate selective incorporation. It operates *ex proprio vigore* and requires no authority such as Title 7, Section 1302 of the D.C.Code, for its implementation. By its terms, a person whose conduct constitutes a crime under the state law "shall be guilty of a like offense and *subject to a like punishment.*" (Emphasis added). Since the federal statute embraces both the offense and the punishment prescribed by state law [11] the Administrator's attempt to selectively incorporate the state offenses under the Assimilative Act while substituting the regulatory penalties of Section 159.191 for those prescribed by the state legislation was without warrant.

Aside from the questionable validity of the regulation as drafted its alloyed character infects, fatally we think, all of the proceedings incident to Robinson's conviction. As heretofore stated, the citation referred to Section 18.1–237 of the Virginia Code which reads in part as follows:

"If any person arrived at the age of discretion profanely curse or swear or get or be drunk in public he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than one nor more than twenty-five dollars."

The citation makes no reference whatever to 14 C.F.R. § 159.71. Conversely, the Conclusion of Law in the Magistrate's Statement merely recites that the defendant was found guilty of a violation of Title 14, Code of Federal Regulations, Section 159.71, with no Virginia statutory reference. Such a conviction could facially embrace (a) disorderly conduct; (b) gambling; (c) obscene literature; or (d) drunkenness. The offense can be narrowed to disorderly conduct in violation of subsection (a) by reading into the conviction the prefatory statement of the magistrate. In turn, however, since the charge of disorderly conduct was based upon the abusive language used by Robinson, the offense could fall within any one of three Virginia statutes. One is Section 18.1–237 hereinbefore quoted. Another is 18.1–255 which reads as follows:

If any person shall, in the presence or hearing of another, curse or abuse

---

7. Sub-section (d) was added by amendment of December 11, 1968. 33 Fed.Reg. 18367.

8. 18 U.S.C. § 13.

9. The latter explanation is suggested to us by the amendment of 14 C.F.R. § 159.11(b) which incorporated by reference Chapter 4 of Title 46.1, Motor Vehicles, of the Code of Virginia, 1950, as amended. The amendment states in part: "The penalties provided by Virginia law for violations of these rules and prohibitions are not incorporated." In his explanation in 30 Fed.Reg. 1037, February 2, 1965, the Administrator stated that the proposal made it possible to prosecute violations of the Virginia laws "under the lesser penalties provided for violations of Part 159."

10. *See* 18 U.S.C. § 7.

11. United States v. Press Publishing Co., 219 U.S. 1, 9, 31 S.Ct. 212, 55 L.Ed. 65 (1911).

such other person, or use any violent abusive language to such person concerning himself or any of his relations, or otherwise use such language, under circumstances reasonably calculated to provoke a breach of the peace, he shall be guilty of a misdemeanor, and on conviction fined in any sum not less than two dollars and fifty cents nor more than five hundred dollars, in the discretion of the jury or the judge trying the case without a jury."

The third is 18.1–253.2 which reads in part:

If any person behaves in a riotous or disorderly manner in any street, highway, public building, or any other public place, other than those mentioned in the preceding section (§ 18.-1–253.1), or causes any unnecessary disturbance in or on any public conveyance, by running through it, climbing through windows or upon the seats, failing to move to another seat when lawfully requested to so move by the operator, or otherwise annoying passengers or employees therein, he shall be guilty of a misdemeanor.

■ The magistrate did not specify which if any, of these statutes was the basis of Robinson's conviction,[12] but the Government in its brief states that the defendant was found guilty under the last quoted statutory section. We find nothing whatever in the record to support this assumptive statement in the Government's brief and if, in fact, this was the basis for the conviction it was at variance with the statutory charge on the citation.[13] On the record before us we find the charge against Robinson and his subsequent conviction so vague and ambiguous that it violated the most rudimentary concepts of Constitutional due process and the Sixth Amendment.[14]

■ Aside from the foregoing observations, we find the proceedings in the magistrate's court deficient in the following respects:

(1) The record contains no written consent by Robinson to be tried before the magistrate as required by Rule 3(b) of the Magistrates Rules.

(2) The record contains no written waiver by the defendant of a record of the proceedings as required by Section 3(c)(2) of the Magistrates Rules.

(3) As heretofore stated, the record contains no formal order entered by the magistrate specifying the charge against the defendant and his conviction thereon.

■ In addition, the record contains no order of the district court specifying the nature of the conviction in the magistrate's court or its disposition of the appeal. The only information in the record is found in the copy of the Docket entries of the district court which carries the cryptic statement: "This matter came on for an appeal from the Magistrate. Appeal from magistrate— affirmed. copies [sic] of minutes—sent." Rule 8(d) of the Magistrates Rules provides that "the scope of appeal shall

---

12. Since the charge against Robinson involved only spoken words, his conviction under any of the three statutes poses a substantial constitutional problem. *See* Lewis v. City of New Orleans, 415 U.S. 130, 94 S. Ct. 970, 39 L.Ed.2d 214 (1974); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L. Ed.2d 408 (1972).

13. Cipes forewarned of this difficulty in his statement:
"The use of a citation or violation notice as a pleading, other than in the most simple traffic case, presents constitutional problems. * * * The usual form of citation or violation notice does not pro-

vide the specificity demanded of a criminal pleading, although the Magistrates Rules suggest in a backhanded way, that such specificity is required. Unless the forms in use are changed, or officers are instructed to provide more information in the existing forms, the government may find itself faced with a large volume of dismissals in petty offense cases." [footnotes omitted] 8 Moore's Federal Practice —Cipes, Criminal Rules, § 3.01 Magistrates Rules (2d ed. 1973).

14. *Cf.* Cole v. Arkansas, 333 U.S. 196, 68 S. Ct. 514, 92 L.Ed. 644 (1948).

be the same as one on an appeal from a judgment of the district court to a court of appeals." The Rule clearly contemplates the entry of a formal order by the district court specifying the conviction in the magistrate's court from which the appeal is taken and reflecting the disposition of the appeal by the district judge.

Finally, while we have no direct authority over the Federal Aviation Administration, we suggest that the difficulties encountered in this case could be eliminated to a large degree by revising 14 C.F.R. § 159.71 to eliminate the attempted incorporation by reference of the criminal laws of Virginia, and drafting specific regulations tailored to the problems and needs of the airport facilities.

For the reasons stated, Robinson's conviction is reversed.

Reversed.