**UNITED STATES of America,**

v.

**Edward John WHITE, Jr.**

**No. 90–30–01–CR–3.**

United States District Court,
E.D. North Carolina,
Fayetteville Division.

July 26, 1990.

Major Borch, Asst. U.S. Atty., Fayetteville, N.C., for U.S.

Richard M. Miller, Fayetteville, N.C., for Edward John White, Jr.

## ORDER

This matter is before the court on motion in limine by defendant to determine the applicability of the Federal Sentencing Guidelines to the assimilated crimes with which he is charged.

Defendant is charged in a six-count indictment with one felony charge, involuntary manslaughter, and five misdemeanors and petty offenses. All of the offenses arise out of the same occurrence on the Fort Bragg Military Reservation located in this district. The manslaughter is a federal felony under 18 U.S.C. § 1112, and the other five offenses, driving while impaired, driving while license revoked, driving left of center, reckless driving and speeding, are all North Carolina statutory crimes made applicable here under the Assimilative Crimes Act, 18 U.S.C. § 13. Defendant contends that the Federal Sentencing Guidelines do not apply to those charges under the Assimilative Crimes Act.

This question has been addressed in this district by United States Magistrate Wallace W. Dixon who, in an order entered on 11 July 1989, held that the Sentencing Guidelines do not apply to assimilated crimes. Being persuaded by Magistrate Dixon's reasoning and unable to improve on the content of his order, much of it is reproduced below and adopted herein.

"The Assimilative Crimes Act, 18 U.S.C. § 13 reads as follows:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title [18 U.S.C.S. § 7], is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

It is generally recognized that the ACA serves to provide a set of criminal laws for federal enclaves by utilizing the laws of the surrounding state to fill-in gaps in the federal criminal law. *United States v. Kaufman,* 862 F.2d 236, 237 (9th Cir.1988); *United States v. Sain,* 795 F.2d 888, 890 (10th Cir.1986); *United States v. Brown,* 608 F.2d 551, 553 (5th Cir.1979); *United States v. Best,* 573 F.2d 1095, 1098 (9th Cir.1978). The ACA acts to transform a state law crime into a federal crime. *United States v. Kiliz,* 694 F.2d 628, 629 (9th Cir.1982). A state criminal law is not assimilated, however, if the precise conduct in question has already been made penal by federal law. In such a situation, there is then no gap in federal law for the state statute to fill. *United States v. Kaufman, supra,* 862 F.2d at 237.

"It has traditionally been recognized that the punishment for an assimilated crime is determined by reference to the state law that originally provided for the offense in question. *United States v. Vaughan,* 682 F.2d 290, 294 (2nd Cir.1982), *cert. denied,* 459 U.S. 946, 103 S.Ct. 261 [74 L.Ed.2d 203] (1982); *see also United States v. Bosser,* 866 F.2d 315, 318 (9th Cir.1989) (underlying purpose of the ACA is to enforce the same crimes and to inflict the same punishments that individuals would receive in analogous state proceedings). Indeed, as the Supreme Court stated in *United States v. Press Publishing Company,* 219 U.S. 1, 31 S.Ct. 212, 55 L.Ed. 65 (1911), when speaking of the precedessor [sic] to 18 U.S.C. § 13:

When these results of the statute are borne in mind, it becomes manifest that Congress, in adopting it, sedulously considered the twofold character of our constitutional government, and had in view the enlightened purpose, so far as the punishment of crime was concerned, to interfere as little as might be with the authority of the states on that subject over all territory situated within their exterior boundaries, and which hence would be subject to exclusive state jurisdiction but for the existence of a United States reservation. In accomplishing these purposes it is apparent that the statute, instead of fixing by its own terms the punishment for crimes committed on such reservations which were not

previously provided for by a law of the United States, adopted and wrote in the state law, with the single difference that the offense, although punished as an offense against the United States was nevertheless punishable only in the way and to the extent that it would have been punishable if the territory embraced by the reservation remained subject to the jurisdiction of the state.

219 U.S. at 9–10, 31 S.Ct. at 214. In *United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958), the Court recognized that Congress utilized the ACA to provide that within each federal enclave 'to the extent that offenses are not preempted by congressional enactments, there shall be complete current conformity with the criminal laws of the respective states in which the enclaves are situated.' 355 U.S. at 293, 78 S.Ct. at 295.

"The Fourth Circuit has been firm on the point that the state law which provides the definition of the offense also must be looked to in determining the applicable punishment. In *United States v. Robinson*, 495 F.2d 30 (4th Cir.1974), the defendant while at Washington National Airport, was charged with disorderly conduct in violation of airport regulations. The regulation in question stated that it was issued under the authority of the District of Columbia Code. The regulation, however, stated that pursuant to 18 U.S.C. § 13, certain parts of the criminal laws of Virginia would be enforced at the airport. 495 F.2d at 33. These laws related to disorderly conduct, gambling, obscene literature, and drunkeness [sic]. *Id.* In reversing the conviction, the Fourth Circuit noted:

> While the Administrator properly referred to the D.C. Code as his authority to promulgate all of the regulations in Part 159, we are at a loss to understand his purported use of the Assimilative Crimes Act of 1948 in Section 159.71. Whether he intended to incorporate the pertinent Virginia criminal statutes by the general references in the regulation or was attempting some form of 'selective assimilation' under 18 U.S.C. § 13 is not at all clear. In any event, we find this novel and hybrid use of the Assimila-

tive Act utterly improper. That Act was designed to assimilate the entire state criminal law into any appropriate federal enclave and does not contemplate selective incorporation. It operates *ex proprio vigore* and requires no authority such as Title 7, Section 1302 of the D.C. Code, for its implementation. By its terms, a person whose conduct constitutes a crime under the state law 'shall be guilty of a like offense and *subject to a like punishment.*' (Emphasis added). Since the federal statute embraces both the offense and the punishment prescribed by state law the Administrator's attempt to selectively incorporate the state offenses under the Assimilative Act while substituting the regulatory penalties of Section 159.191 for those prescribed by the state legislation was without warrant.

*Id.*

"In *United States v. Price*, 812 F.2d 174 (4th Cir.1987), the Fourth Circuit concluded that the North Carolina Fair Sentencing Act was applicable to a crime prosecuted in federal court under the Assimilative Crimes Act. The facts of that case involved a non-Indian who pleaded guilty to a charge of taking indecent liberties with an eight-year old Indian child on the Cherokee Indian Reservation. The *Price* court noted that courts had long given effect to the plain language of 18 U.S.C. § 13 which provided that persons convicted thereunder 'shall be guilty of a like offense and subject to a like punishment.' 812 F.2d at 175. The court held that the ACA assimilated state substantive law pertaining [sic] both to the elements of an offense and to its punishment.

"It is the opinion of this court that the doctrine of looking to state criminal statutes in order to determine the sentence for an assimilated crime has not been changed by the enactment of the Sentencing Reform Act, and the promulgation of the Sentencing Guidelines. In order to reach such a result, it would be necessary to determine that Congress intended for the passage of the Sentencing Reform Act to amend or repeal the 'like punishment' provision of

the ACA. In *United States v. Mayberry*, 774 F.2d 1018 (10th Cir.1985), the court determined that the imposition of a special assessment pursuant to 18 U.S.C. § 3013, as provided by the Comprehensive Crime Control Act of 1984, violated the fundamental policy underlying the Assimilated Crimes Act where the applicable state law did not provide for such assessments. The Tenth Circuit noted in *Mayberry* that the policy behind the ACA is to insure that those persons alleged to have engaged in a non-federal crime on federal property be treated as if the crime had actually occurred in the surrounding state. 774 F.2d at 1021. In *Mayberry*, the applicable state law did not provide for the imposition of special assessments. The court held that to apply such assessments to assimilative crimes would, therefore, violate the ACA's principle of conformity to state criminal law. *Id.* at 1021–22. The Tenth Circuit concluded that it was improper to apply special assessments against persons convicted of assimilative crimes absent a specific directive from Congress that such assessments were to be imposed.

"The Fourth Circuit essentially adopted the *Mayberry* analysis in *United States v. King*, 824 F.2d 313 (4th Cir.1987). The Fourth Circuit noted its prior holdings in *Price* and *Robinson* to reaffirm its determination that the ACA assimilates the entire substantive criminal law of the state, including both those laws which defined the offense and those which governed the manner in which the offense was to be punished. 824 F.2d at 315. The *King* court rejected the government's contention that the enactment of 18 U.S.C. § 3013 amended the ACA by partially repealing the 'like punishment' provision of the Act. The court went on to note that:

> As the Supreme Court has again recently reminded us, 'repeals by implication are not favored' and 'will not be found unless an intent to repeal "is clear and manifest." ' *Rodriguez v. United States*, [480] U.S. [522], 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987) (*per curiam* ) (*citing United States v. Borden Co.*, 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939) (*quoting Red Rock v. Henry*, 106

U.S. (16 Otto) 596, 602, 1 S.Ct. 434, 439, 27 L.Ed. 251 (1883)). An intent to repeal can be implied only from 'irreconcilable conflict' between enactments. *Rodriguez*, [480] U.S. at [524], 107 S.Ct. at 1392 (*quoting Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982)). The provisions of the statutes at issue here, however, can be read harmoniously without resort to implied amendment or repeal of either. The ACA defines the circumstances under which the special assessment may be imposed, while § 3013 specifies the amount of the assessment and the manner of collection in those cases in which the district court has the authority to impose it.

824 F.2d at 317. The court in *King* concluded that § 3013 applied to offenses under the ACA but was subject to the 'like punishment' limitations of the Act. *Id.*

"The court notes that, since the decisions in *Mayberry* and *King*, Congress has expressly amended 18 U.S.C. § 3013 to provide that assimilated crimes are subject to the imposition of special assessments. Congress, however, has not directly spoken as to the applicability of the Sentencing Guidelines to crimes under the ACA. The government, in its brief, points out that the Sentencing Commission has stated that the Guidelines apply to assimilated crimes. The court notes that Guideline 2X5.1 and the commentary contained therein indicate that assimilative crimes are covered by the Sentencing Guidelines. This court, however, finds itself persuaded by the logic of Magistrate's [sic] Reid's decision in [*United States v.*] *Richards*, [88–9005M–1, 1988 WL 123140 (D. Kan. Oct. 21, 1988) ] in which he states:

> The mere fact that the Sentencing Reform Act passed after the adoption of the ACA is not indicative, of itself, that the Sentencing Reform Act was intended to repeal the 'like punishment' provision of the ACA. Repeals by implication are not favored and will not be found unless an intent to repeal is clear and manifest. *Rodriguez v. United States*, [480 U.S. 522] 107 S.Ct. 1391, 1392 [94 L.Ed.2d

533] (1987). There is no clear and manifest indication that Congress intended to repeal the 'like punishment' provision of the ACA. In fact, application of the sentencing guidelines to crimes under the ACA would gut the very policy behind the ACA, because those convicted of state crimes incorporated under the ACA would no longer be treated as if the crime had occurred in the surrounding state. For this reason, absent a specific directive from Congress that it intended for the sentencing guidelines to apply under the ACA, this court will not utilize the sentencing guidelines in sentencing convicted defendants under the ACA.

The government points out that United States Sentencing Commission Guideline § 2X5.1 and the commentary indicate that the guidelines do cover assimilative crimes, at least if such crime is a felony or class A misdemeanor. However, the commission cannot amend or repeal laws, only Congress can. Congress has not amended the ACA by applying the sentencing guidelines to assimilative crimes. *Richards, supra,* slip op. at 4–5, *reprinted in* 1 *Federal Sentencing Reporter,* at 304 (1988). This court, therefore, also finds that the enactment of the Sentencing Reform Act, and the promulgation of the Sentencing Guidelines, has not repealed the 'like punishment' provision of the ACA.

"In reaching this decision, this court has determined that no irreconcilable conflict need be found between the Sentencing Reform Act and the Assimilative Crimes Act, such as would demand a finding of a clear congressional intent to modify the latter. These Acts, of course, were intended to accomplish different goals. The Sentencing Reform Act was designed to promote the federal interest of greater uniformity in sentencing. The ACA, as previously noted, exists to give effect to both federal and state interests. It provides a wholesale method of filling-in the gaps in the federal criminal code. *United States v. Prejean,* 494 F.2d 495, 496 (5th Cir.1974). The Act also serves, however, to provide for conformity between the laws governing a federal enclave and those of the surrounding state, as well as insuring that persons within a federal enclave are afforded an equal degree of legal protection as those persons outside the enclave. *Kiliz,* 694 F.2d at 629.

"This court finds that to utilize the Sentencing Guidelines for assimilated crimes would render the achievement of these last two interests an impossibility. Guidelines sentencing for such crimes would obviously mean that there would no longer be conformity, at least with regard to the substantive law of sentencing, between state laws applicable to federal enclaves and those same laws applicable in the surrounding state. More important, however, to utilize federal sentencing guidelines for assimilated crimes would mean that persons within a federal enclave would no longer be afforded the same degree of protection as those in other parts of the state. This court is of the opinion that the penalities [sic] provided for an offense represent an important part of the state's determination of the degree of protection to be afforded by that particular law.

"Nor does this court feel that use of the Guidelines for assimilated crimes would materially advance the purpose behind the Sentencing Reform Act, namely uniformity in sentencing throughout the federal judiciary. It is obvious that the definition and scope of assimilated crimes will vary depending upon the law of the particular state in which the federal enclave is located. Uniformity of sentencing, therefore, can, at best, be achieved only within the framework of the laws of an individual state. This court believes that such uniformity can best be achieved by an adherence to the substantive law of sentencing adopted by the state in question."

The court, therefore, determines that the provisions of the Sentencing Reform Act do not apply to state crimes made applicable to federal defendants under the Assimilative Crimes Act, 18 U.S.C. § 13.