*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CM-1219

GILBERTO LOPEZ-RAMIREZ, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 10-12-17
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(DVM-2363-14)

(Hon. Neal E. Kravitz, Trial Judge)

(Argued June 27, 2017                    Decided October 12, 2017)

*Daniel S. Harawa*, Public Defender Service, with whom *Samia Fam* and *Alice Wang*, Public Defender Service, were on the brief, for appellant.

*Lauren R. Bates*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Candice C. Wong*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BECKWITH, *Associate Judges*, and NEBEKER, *Senior Judge*.

Opinion for the court by *Associate Judge* FISHER.

Dissenting opinion by *Associate Judge* BECKWITH at page 20.

FISHER, *Associate Judge*:   After a bench trial, appellant Gilberto Lopez-Ramirez was convicted of attempted misdemeanor sexual abuse,[1] but acquitted of three counts of contempt.[2]   Appellant argues that he should have received a jury trial because his "total financial exposure" was greater than $4,000 when taking into account assessments under the Victims of Violent Crime Compensation Act (VVCCA).   We affirm the decision of the Superior Court denying appellant's request for a jury trial.   We remand for the limited purpose of correcting appellant's sentence.

## I.  Background

VVCCA assessments are mandatory payments "imposed upon each person convicted of or pleading guilty or nolo contendere to the offense in the Superior Court of the District of Columbia or any other court in which the offense is charged."   D.C. Code § 4-516 (a) (2012 Repl.).   A defendant must pay "an assessment of between $50 and $250 for . . . misdemeanor offenses, and an assessment of between $100 and $5,000 for each felony offense[.]"   *Id.*   The

---

[1]  D.C. Code §§ 22-3006, -3018 (2012 Repl.).

[2]  D.C. Code § 23-1329 (c) (2012 Repl.).

assessments are placed in a fund that is used to compensate victims of crime in the District of Columbia. *See Parrish v. District of Columbia*, 718 A.2d 133, 133-34 (D.C. 1998); *see also* D.C. Code § 4-515 (2012 Repl.) (Crime Victims Compensation Fund).

D.C. Code § 16-705 (b)(1)(B) (2012 Repl.) allows a defendant to demand a trial by jury if he "is charged with 2 or more offenses which are punishable by a cumulative fine or penalty of more than $4,000 or a cumulative term of imprisonment of more than 2 years[.]" On the day before trial, appellant moved for a jury trial, arguing that an assessment under the VVCCA should be considered a "fine or penalty" within the meaning of this statutory provision.

Standing alone, the charge of attempted misdemeanor sexual abuse exposed appellant to paying $750: a $500 fine, plus a $250 VVCCA assessment. *See* D.C. Code §§ 22-3006, -3018 (2012 Repl.) (setting a maximum fine of $500 for attempted misdemeanor sexual abuse). Appellant was exposed to a potential payment of $3,750 if convicted of the three contempt counts: $3,000 in fines, and $750 in VVCCA assessments. *See* D.C. Code §§ 23-1329 (c), 22-3571.01 (2012 Repl.) (setting a maximum fine of $1,000 for each contempt violation). Appellant therefore faced total potential payments of $4,500. Because this amount exceeded

the $4,000 threshold for fines or penalties in D.C. Code § 16-705 (b)(1)(B), appellant argued that he was entitled to a jury trial.

Judge Laura Cordero rejected appellant's argument, ruling that a VVCCA assessment "is not a fine." She cited *Gotay v. United States*, 805 A.2d 944 (D.C. 2002), in which this court noted that the VVCCA "does not call [these sums] fines; moreover, fines are generally prescribed in the statutes that define particular crimes and establish the penalties for them." *Id.* at 948 n.9. The *Gotay* court decided to adhere to the statutory term "assessments" when referring to VVCCA payments. *Id.* However, the court in *Gotay* was not presented with the question we consider here—whether a VVCCA assessment should count as a "fine or penalty" for purposes of determining the statutory right to a jury trial.

Because appellant only faced a maximum payment of $3,500 if VVCCA assessments were not included, Judge Cordero's ruling meant that he could not cross the $4,000 threshold established in D.C. Code § 16-705 (b)(1)(B) to obtain a jury trial. After convicting appellant of attempted misdemeanor sexual abuse, Judge Neal E. Kravitz sentenced him to 180 days' incarceration, with execution of sentence suspended as to all but thirty days; two years of probation; and a $50 payment under the VVCCA. On appeal, Mr. Lopez-Ramirez reiterates his

argument that VVCCA assessments should be treated as fines or penalties under D.C. Code § 16-705 (b)(1)(B), thus making his case jury-demandable.

## II. Analysis

We note as an initial matter that our inquiry focuses on the statutory right to a jury trial conferred in the District of Columbia. Appellant has not asserted that his constitutional right to a jury trial has been violated, and such a claim would fail under Supreme Court precedent. *See, e.g., Lewis v. United States*, 518 U.S. 322, 323 (1996) (holding "that no jury trial right exists where a defendant is prosecuted for multiple petty offenses"); *United States v. Nachtigal*, 507 U.S. 1, 4-6 (1993) (holding that a defendant was "not constitutionally entitled to a jury trial" because he was charged with a "petty offense" even though the penalties for the offense included a maximum fine of $5,000). The issue presented is entirely a matter of legislative intent: did the Council of the District of Columbia intend that a VVCCA assessment be treated as a fine or penalty for purposes of applying D.C. Code § 16-705?

### A. Standard of Review

Our review of questions of statutory interpretation is *de novo*. *Peterson v. United States*, 997 A.2d 682, 683 (D.C. 2010). "We begin by looking first to the plain language of the statute to determine if it is clear and unambiguous." *Id.* at 684 (internal quotation marks omitted). We are mindful, however, that "[s]tatutory interpretation is a holistic endeavor[.]" *Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C. 2010) (en banc) (quoting *Washington Gas Light Co. v. Pub. Serv. Comm'n*, 982 A.2d 691, 716 (D.C. 2009)). "When interpreting a statute, the judicial task is to discern, and give effect to, the legislature's intent." *In re C.G.H.*, 75 A.3d 166, 171 (D.C. 2013) (quoting *A.R. v. F.C.*, 33 A.3d 403, 405 (D.C. 2011)). Indeed, "the primary rule" of statutory construction "is to ascertain and give effect to legislative intent and to give legislative words their natural meaning; should effort be made to broaden the meaning of statutory language by mere inference or surmise or speculation, we might well defeat true legislative intent." *Grayson v. AT & T Corp.*, 15 A.3d 219, 237-38 (D.C. 2011) (en banc) (alterations omitted) (quoting *Banks v. United States*, 359 A.2d 8, 10 (D.C. 1976)).

Thus, "[t]he words of a statute are a primary index but not the sole index to legislative intent; the words cannot prevail over strong contrary indications in the legislative history." *Id.* at 238 (internal quotation marks omitted). "It is a fundamental canon of statutory construction that the words of a statute must be

read in their context and with a view to their place in the overall statutory scheme." *O'Rourke v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 46 A.3d 378, 383 (D.C. 2012) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

## B. The Text of the Statutes

We begin by looking at the statutory texts. "Fine" and "penalty" are not defined in D.C. Code § 16-705, but the legislature could not have thought that VVCCA assessments fell within those terms when it first enacted that statute. *See, e.g.*, D.C. Code § 11-715a (1961 ed.) (recodifying the provision that a defendant may demand a jury trial when the "fine or penalty" exceeds certain thresholds). VVCCA assessments were not created until 1982. *See* 29 D.C. Reg. 983-85 (1982). Appellant nonetheless argues that VVCCA assessments should be considered to be fines or penalties under D.C. Code § 16-705 because, among other reasons, they "place a financial burden on the defendant," they "are imposed as part of a defendant's sentence," they have characteristics that seem to fall within dictionary definitions of "fine" and "penalty," and the "failure to pay them will result in the same treatment as the failure to pay any other fine or penalty."

It is not obvious from the text of the VVCCA that the Council intended those assessments to fall within the term "fine or penalty," as used in § 16-705. First, the Council used the word "assessment" in the VVCCA rather than "fine" or "penalty." The Council also specified that VVCCA assessments were to be imposed "[i]n addition to and separate from punishment imposed," *see* D.C. Code § 4-516 (a) (2012 Repl.), suggesting that the Council did not consider VVCCA assessments to be punishment in the same way that a "fine or penalty" is. *See id.* § 16-705 (b)(1)(B) (providing that a defendant may receive a jury trial when he "is charged with 2 or more offenses which are *punishable* by a cumulative *fine or penalty* of more than $4,000" (emphases added)).[3] Further, D.C. Code § 4-516 (c) provides that VVCCA assessments "shall be collected as fines." This language

---

[3] Appellant cites certain federal cases for the proposition that federal victim-assistance assessments have been interpreted as penalties or punishments. *See United States v. King*, 824 F.2d 313, 317 (4th Cir. 1987); *United States v. Smith*, 818 F.2d 687, 690 (9th Cir. 1987); *United States v. Mayberry*, 774 F.2d 1018, 1021 (10th Cir. 1985). However, those decisions are not binding on us, and they address issues different than the one presented here. Moreover, other federal courts have cast doubt on the proposition that the federal assessments are punishments. *See United States v. Donaldson*, 797 F.2d 125 (3d Cir. 1986) (holding that the rule of lenity did not apply to the statute establishing the assessments because "Congress' purpose in enacting [the statute] was not to punish criminal defendants, but rather was to raise revenue"); *see also United States v. Dobbins*, 807 F.2d 130, 131 (8th Cir. 1986) (adopting the holding of *Donaldson*).

would be unnecessary if the Council otherwise equated "assessments" with "fines."[4]

Nonetheless, given that "fine," "penalty," and "assessment" can "seem ambiguous in isolation," we look to legislative history and to "the remainder of the statutory scheme" to discern the legislature's intent. *Ferguson v. United States*, 157 A.3d 1282, 1285-86 (D.C. 2017). An examination of legislative history reveals no evidence that the Council intended VVCCA assessments to affect the meaning of the "fine or penalty" language in D.C. Code § 16-705. Such an interpretation would disrupt a statutory scheme that the Council has carefully constructed over decades.

---

[4] Appellant emphasizes that the word "fines" occasionally appears in the committee report for the latest amendments to the VVCCA. Many of these references, however, are instances where the Committee was summarizing the testimony of various witnesses who supported the amendments. *See* D.C. Council, Report on Bill 11-657 at 8-9, 11 (Sept. 26, 1996). Appellant also points to the use of the word "fines" in the preamble of the proposed bill as it is attached to the committee report. *See id.* at Attachment A. However, that term does not appear in the preamble for the enrolled original. *See* 44 D.C. Reg. 1142 (1997). Nowhere does the Council suggest that VVCCA assessments are "fines" for purposes of analyzing the right to a jury trial. Finally, appellant notes that then-Mayor Marion Barry sometimes referred to the assessments as "fines" in a 1981 letter recommending the original VVCCA legislation to the Council. *See* D.C. Council, Report on Bill 4-361 at Appendix A (Dec. 16, 1981). However, these references were made in the context of a brief summary of the proposed legislation, and, in any event, the Mayor does not express the intent of the Council.

## C. The Impact on Other Statutes

Adopting appellant's argument would affect much more than the "cumulative fine or penalty" provision invoked by appellant. It would also dramatically alter the application of D.C. Code § 16-705 (b)(1)(A), which has provided since 1993[5] that a defendant may demand a jury trial when he "is charged with an offense which is punishable by a fine or penalty of more than $1,000 or by imprisonment for more than 180 days." *See* 40 D.C. Reg. 796, 799 (1993). In 1994 the Council passed the Misdemeanor Streamlining Act, which reduced the maximum penalties for more than forty crimes to a fine of not more than $1,000 or imprisonment for not more than 180 days, or both, for the express purpose of making those crimes non-jury-demandable. *See* 41 D.C. Reg. 2608 (1994); D.C. Council, Report on Bill 10-98 at 3-8 (Jan. 26, 1994). In 2013 the Council standardized the maximum fine for 180-day crimes at $1,000. *See* D.C. Code § 22-3571.01 (b) (2012 Repl. & Supp. 2014); 60 D.C. Reg. 9834 (2013).

---

[5] This provision was previously codified at D.C. Code § 16-705 (b)(1) (1997 ed.). A small change was made in 1994 to correct a typographical error. *See* 41 D.C. Reg. 5197 (1994); D.C. Council, Report on Bill 10-673 at 5 (June 21, 1994).

Thus, a vast number of misdemeanor offenses currently have a maximum fine of $1,000. Under appellant's interpretation of "fine or penalty," a mandatory VVCCA assessment would be added to the $1,000 maximum fine for all of those offenses, suddenly making them all jury-demandable under D.C. Code § 16-705 (b)(1)(A) even when charged in a single-count information.[6] This interpretation would produce a result wholly at odds with the intent of the Misdemeanor Streamlining Act. There is absolutely no evidence that the Council intended this result. Accordingly, even if a VVCCA assessment could be considered a "fine," "penalty," or "punishment" for some purposes, we would reject appellant's argument. *See, e.g., District of Columbia Office of Tax & Revenue v. Sunbelt Beverage, LLC*, 64 A.3d 138, 145 (D.C. 2013) ("[I]t is well established that the literal meaning of a statute will not be followed when it produces absurd results[.]" (internal quotation marks omitted)); *Peoples Drug Stores v. District of Columbia*, 470 A.2d 751, 754 (D.C. 1983) (en banc) ("[A] court may refuse to adhere strictly

---

[6] Appellant's theory would also support an argument he made in the Superior Court but does not advance on appeal. He argued that he was entitled to a jury trial on each of the charges of contempt because the VVCCA assessment would be added to the maximum fine of $1,000. A provision in the Misdemeanor Jury Trial Act gives a defendant the right to a jury trial if he "is charged with 2 or more offenses and the offenses include at least one jury demandable offense and one non-jury demandable offense[.]" *See* D.C. Code § 16-705 (b-1) (2012 Repl.); 49 D.C. Reg. 3440 (2002).

to the plain wording of a statute in order to effectuate the legislative purpose[.]" (internal quotation marks omitted)).

Indeed, adopting appellant's position would suggest that the Misdemeanor Streamlining Act has been misapplied since it was enacted. But nothing in the committee report for the 1997 amendments to the VVCCA suggests that the Council intended the result appellant urges, *see* D.C. Council, Report on Bill 11-657 (Sept. 26, 1996), and we decline to find it by implication. *Cf., e.g., Richardson v. United States*, 927 A.2d 1137, 1143 (D.C. 2007) (warning that "[r]epeals by implication are not favored" and that "[i]n the absence of any express repeal or amendment, a later statute is presumed to be in accord with the legislative policy embedded in a prior statute so as to allow the prior and later statutes to be construed together" (alterations omitted)).

We have stressed that "the canon disfavoring repeal by implication must be taken seriously":

> It is one of the fundamental ground rules under which laws are framed. Without it, determining the effect of a bill upon the body of preexisting law would be inordinately difficult, and the legislative process would become distorted by a sort of blind gamesmanship, in which Members of [the legislature] vote for or against a

particular measure according to their varying estimations of whether its implications will be held to suspend the effects of an earlier law that they favor or oppose.

*Speyer v. Barry*, 588 A.2d 1147, 1165 (D.C. 1991) (quoting *United States v. Hansen*, 772 F.2d 940, 944 (D.C. Cir. 1985)). Consequently, we demand that "the intention of the legislature to repeal . . . be clear and manifest." *Id.* (emphasis omitted) (quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 468 (1982)).

We confront a similar situation here. Strictly speaking, appellant is not asserting that any portions of § 16-705 have been repealed by implication, but his argument would have much the same effect. He contends that the day-to-day application of § 16-705 has been dramatically altered either by implication or by inadvertence. The intention of the legislature to make this change certainly is not "clear and manifest."

## D. The Legislative History of the Misdemeanor Jury Trial Act of 2002

Perhaps more importantly, the legislative history of the *very statute on which appellant relies* dispels the notion that the Council intended for VVCCA assessments to be considered fines or penalties for purposes of determining the

right to a jury trial. D.C. Code § 16-705 (b)(1)(B) was enacted as part of the Misdemeanor Jury Trial Act of 2002. *See* 49 D.C. Reg. 3439 (2002). The legislation apparently was prompted by the Supreme Court's decision in *Lewis*, which held that the Sixth Amendment right to a jury trial did not limit the number of petty offenses that could be joined in one prosecution. *See Lewis*, 518 U.S. at 323-24; D.C. Council, Report on Bill 14-2 at 1-2 (Nov. 27, 2001). In the committee report, the Council expressed concern with allowing prosecutors to charge a defendant with multiple misdemeanor offenses, which cumulatively would "potentially result[] in lengthy prison sentences," unless a trial by jury was provided. D.C. Council, Report on Bill 14-2 at 1. However, the Council made clear that it was "trying to balance the interests of efficiency and justice" when setting the thresholds for determining when a defendant could demand a jury trial. *Id.* at 4.

In that balancing process, the Council rejected arguments by the Public Defender Service for the District of Columbia and the American Civil Liberties Union that defendants charged with multiple offenses should receive a jury trial whenever the maximum cumulative penalty would be more than 180 days. *Id.* at 4, 7, Attachment E (testimony of Laura E. Hankins, Chief Legislative Counsel, Public Defender Service for the District of Columbia) at 3, 6-7. Superior Court Chief

Judge Rufus G. King III expressed the court's "concern" with such a provision, noting the "toll" it "would take on juror and judicial resources" given the large increase in the number of jury-demandable cases that would result. *Id.* at Attachment E (testimony of Chief Judge Rufus G. King III) at 1. The Chief Judge estimated that the provision would create "an additional 300 jury trials per year." *Id.* at Attachment E (testimony of Chief Judge King) at 2.

The Council responded to the Superior Court's concerns. Finding that the "180 day limit would involve a significant increase in the administrative burden on the [Superior] Court," the Council decided to set the threshold at two years instead. *Id.* at 4. It then changed the maximum-fine threshold for multiple offenses from $1,000, as had been proposed, to the current $4,000 "in order to be consistent with the change in the threshold for jury demandable offenses based on [the] cumulative prison penalt[y] [of two years]." *Id.*

The committee report stressed that these changes ensured "that the legislation will apply to cases representing roughly one to 5% of misdemeanor cases in Superior Court," which would constitute only "10 – 50 total cases per year[.]" *Id.* at 5. Given this limited impact, the Council Committee "believe[d]

that the additional resources required by the [Superior] Court and law enforcement agencies will be minimal." *Id.*

Appellant's interpretation of D.C. Code § 16-705 would plainly undo the Council's careful balancing. Instead of ten to fifty additional cases per year being subject to a jury trial, the Superior Court would be faced with additional jury trials for the many offenses that currently are punishable by 180 days in prison and/or a $1,000 fine.[7] As former Chief Judge King noted in his testimony, such a result would strain the Superior Court's resources by requiring the court to summon and accommodate more jurors; to spend more time on misdemeanor cases given that jury trials typically take longer than bench trials, resulting in the court resolving fewer overall cases per month; and to "realign[] . . . resources" from "more serious felony trials" to misdemeanors. D.C. Council, Report on Bill 14-2 at Attachment E (testimony of Chief Judge King) at 2-3.

Significantly, the Council weighed these issues four years *after* passage of the most recent amendments to the VVCCA. The Council would presumptively

---

[7] Most of the 180-day offenses would be implicated because the Council has provided that the default maximum fine for those offenses is $1,000. *See* D.C. Code § 22-3571.01 (b) (2012 Repl. & Supp. 2014) (the "Criminal Fine Proportionality Amendment Act of 2012").

have been aware of the current VVCCA assessment system, yet it still expressed its intention to limit the number of misdemeanor cases that would be tried by a jury, and it nowhere indicated that it viewed VVCCA assessments as affecting that analysis. In fact, the committee report outlined proposed changes to several offenses that would set the maximum penalties at 180 days in prison, and/or a fine of $1,000, "so that the defendant does not have the right to a jury trial in these cases." *Id.* at 3-4. Yet, under appellant's interpretation of "fine or penalty" in D.C. Code § 16-705, a defendant *would* have been entitled to a jury trial in those cases.[8]

Indeed, considered in context, appellant's argument would suggest that both the Council and the Superior Court have been ignorantly interpreting the provisions relating to jury-demandable offenses for more than two decades. First, VVCCA assessments were created in 1982, and the Misdemeanor Streamlining

---

[8] The committee report for the Criminal Fine Proportionality Amendment Act of 2012, which set the default maximum fine for 180-day offenses at $1,000, *see* D.C. Code § 22-3571.01 (b) (2012 Repl. & Supp. 2014); 60 D.C. Reg. 9834 (2013), contains similar examples. For instance, the report stated that the maximum fine for a first offense of driving under the influence (DUI) or driving while intoxicated (DWI) was being changed from $300 to $1,000. D.C. Council, Report on Bill 19-214 at 12 (Oct. 9, 2012). Because VVCCA assessments are imposed for traffic offenses, *see* D.C. Code § 4-516 (a) (2012 Repl.), a defendant charged with those offenses would be exposed to a potential payment over $1,000. Nonetheless, the report stated: "While the penalty increases substantially, neither the old penalty, nor the new penalty, create a right to a jury trial." D.C. Council, Report on Bill 19-214 at 12 (citing D.C. Code § 16-705 (b)).

Act was not passed until 1994. *See* 29 D.C. Reg. 983-85 (1982); 41 D.C. Reg. 2608 (1994). Appellant seems to assume that the Council did not realize that its decision in 1994 to set the maximum fine for various offenses at $1,000 did not in fact accomplish its goal of making those offenses non-jury-demandable because the VVCCA assessment would have to be added to the $1,000. Second, appellant's theory would lead to the conclusion that the Superior Court has, since 1993,[9] erroneously denied a jury trial in every case in which a defendant has been charged with at least one offense punishable by a fine of $1,000.

In sum, the Council never intended what appellant proposes. Whatever the definitions of "fine," "penalty," or "assessment" may be in isolation, the legislative history and the larger statutory scheme "make[] clear that [the statutory terms] should not be read to extend to the outer limits of [their] definitional possibilities." *Odeniran v. Hanley Wood, LLC*, 985 A.2d 421, 426 (D.C. 2009) (internal quotation marks omitted); *see also Dolan v. United States Postal Serv.*, 546 U.S. 481, 486 (2006) (concluding that "context and precedent require[d] a narrower reading" of a statute because "[t]he definition of words in isolation . . . is not necessarily controlling in statutory construction"); *O'Rourke*, 46 A.3d at 386-87

---

[9] *See* 40 D.C. Reg. 796, 799 (1993) (amending D.C. Code § 16-705 to permit a jury trial when a defendant has been charged with an offense punishable by a fine or penalty of "more than $1,000").

(rejecting a statutory interpretation that would lead to "incongruous consequences" and was "in tension" with other statutes). We therefore affirm the decision to deny appellant a jury trial.

## E. Remand to Correct Sentence

We remand for the limited purpose of correcting appellant's sentence. The trial judge imposed a sentence of 180 days' incarceration, suspended as to all but thirty days. A sentence of 180 days may be imposed for misdemeanor sexual abuse, D.C. Code § 22-3006 (2012 Repl.), but appellant was convicted of *attempted* misdemeanor sexual abuse, which carries half that penalty. *See id.* § 22-3018.

## III. Conclusion

We remand with instructions to correct appellant's sentence. In all other respects, the judgment of the Superior Court is hereby

*Affirmed.*

BECKWITH, *Associate Judge*, dissenting in part: The majority rejects Gilberto Lopez-Ramirez's contention that the Victims of Violent Crime Compensation Act (VVCCA) assessment[1] is a "fine or penalty" for the purposes of the jury-trial statute, D.C. Code § 16-705, on the ground that Mr. Ramirez's "interpretation would produce a result wholly at odds with the intent of the Misdemeanor Streamlining Act."[2] *Ante* at 11. But by deviating from the ordinary commonsense understanding of the terms "fine" and "penalty"—an understanding that encompasses a fee like the VVCCA assessment that was automatically imposed following conviction in an amount proportional to the severity of the offense—the majority's interpretation produces a result "wholly at odds" with the intent of the jury-trial statute: it deprives defendants facing fines above the statutorily specified threshold of their right to a jury trial. Because there is no nonspeculative basis for us to prioritize the legislative purpose of the Misdemeanor Streamlining Act over that of the jury-trial statute, we should apply the statutes as written, construe their words "according to their ordinary sense and with the

---

[1] D.C. Code § 4-516 (a) (2012 Repl.). All subsequent D.C. Code citations are to the 2012 Replacement set unless otherwise noted.

[2] Title I of D.C. Act 10-238, 41 D.C. Reg. 2608 (1994).

meaning commonly attributed to them,"[3] and conclude that the VVCCA assessment is a "fine or penalty."

## I. The VVCCA Assessment Is a "Fine" or "Penalty" Under § 16-705.

The text of the jury-trial statute, D.C. Code § 16-705, reflects the intent of the D.C. Council (and of Congress[4]) that misdemeanor defendants facing monetary fines and penalties above a certain threshold should receive a jury trial. In its current form, the statute provides that a defendant "charged with an offense which is punishable by a fine or penalty of more than $1,000" or "charged with 2 or more offenses which are punishable by a cumulative fine or penalty of more than $4,000" is entitled to a jury trial. D.C. Code § 16-705 (b)(1). The Act's long title—in relevant part, "AN ACT to amend section 16-705 . . . to require that trials be jury demandable where a defendant charged with more than one offense is

---

[3] *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979)).

[4] Congress revised and codified the jury-trial statute at D.C. Code § 16-705 by enacting an Act of Dec. 23, 1963, Pub. L. No. 88-241, 77 Stat. 478, 558. But Congress had provided for a statutory right to a jury trial long before that. *See* Act of Mar. 3, 1891, ch. 536, § 2, 27 Stat. 848 (providing that "[i]n all prosecutions in which [defendants] would not be by force of the Constitution of the United States entitled to a trial by jury, but in which the fine or penalty may be fifty dollars or more or imprisonment for thirty days or more, the trial shall be by jury"). The jury-trial statute was most recently amended by the Misdemeanor Jury Trial Act of 2002, 49 D.C. Reg. 3439.

exposed to a cumulative maximum fine of more than $4,000 or a cumulative maximum term of imprisonment of more than 2 years"—reflects the D.C. Council's desire to expand the right to a jury trial in cases involving substantial fines or penalties. *Id.*

Because "fine" and "penalty" are not defined in the jury-trial statute, and because they do not seem to be terms of art, this court will typically "accord them their ordinary meaning in common usage." *Hood v. United States*, 28 A.3d 553, 559 (D.C. 2011). In common usage, the term "fine" refers to "a sum . . . imposed as punishment for a crime." *Webster's Third New International Dictionary* 852 (2002); *see also Black's Law Dictionary* 750 (10th ed. 2014) (defining "fine" as "[a] pecuniary criminal punishment or civil penalty payable to the public treasury"). The term "penalty" means "the suffering in person, rights, or property which is annexed by law or judicial decision to the commission of a crime or public offense." *Webster's Third New International Dictionary* 1668; *see also Black's Law Dictionary* 1313 (defining "penalty" as "[p]unishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as punishment").

Both fines and penalties are ordinarily understood to be forms of punishment. A punishment is "[a] sanction—such as a fine, penalty, confinement,

or loss of property, right, or privilege—assessed against a person who has violated the law." *Black's Law Dictionary* 1428. Typical criteria indicating that a monetary fee or assessment is a punishment are: (1) it "places an additional burden or penalty upon the defendant"; (2) it "can be imposed only following conviction of a crime"; (3) "the assessment [is] higher . . . for more serious crimes," reflecting a "punitive objective"; and (4) the fee is "collected in the same way that fines are collected." *United States v. Mayberry*, 774 F.2d 1018, 1021 (10th Cir. 1985); *accord*, *United States v. King*, 824 F.2d 313, 316–17 (4th Cir. 1987); *United States v. Smith*, 818 F.2d 687, 689–90 (9th Cir. 1987);[5] *see also United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (holding that forfeiture under a certain statute constituted punishment because "[t]he statute directs a court to order forfeiture as an additional sanction when 'imposing sentence on a person convicted of' a willful violation").

---

[5] The majority acknowledges that Mr. Lopez-Ramirez cited these and similar cases and correctly notes that these "decisions are not binding on us" and that they "address issues different than the one presented here." *Ante* at 8 n.3. But the point in citing these cases is that they sensibly explain what a "punishment" or "penalty" is. The critical question in this case is whether the VVCCA assessment is a "fine" (that is, monetary punishment) or "penalty" as those terms are commonly understood, and these cases provide helpful guidance. The majority sets forth no alternative conception of what "fine," "penalty," and "punishment" mean and does not attack the cited cases' understanding of those terms.

The VVCCA, originally enacted in 1982 and substantially revised in 1996,[6] provides for an "assessment"[7] to be imposed on defendants "convicted of or pleading guilty or *nolo contendere* to" various offenses: "$100 for each violation of § 50-2201.05, . . . between $50 and $250 for other serious traffic or misdemeanor offenses, and . . . between $100 and $5,000 for each felony offense." D.C. Code § 4-516 (a).[8] The VVCCA provides that "[t]he decision of the sentencing court regarding assessments is final," *id.*, that "[a]ssessments . . . shall be collected as fines," *id.* § 4-516 (c),[9] and that "[f]ailure to pay . . . will subject a

---

[6] Victims of Violent Crime Compensation Act of 1981, 29 D.C. Reg. 969 (Apr. 6, 1982); Victims of Violent Crime Compensation Act of 1996, 44 D.C. Reg. 1141 (Apr. 9, 1997).

[7] The term "assessment" is neutral and can refer to either a fine or a non-fine payment. *See Black's Law Dictionary* 139 (defining "assessment" as the "[i]mposition of something, such as a tax or fine . . . ; the tax or fine so imposed").

[8] The majority notes that the VVCCA assessment is "imposed '[i]n addition to and separate from punishment imposed.'" *Ante* at 8 (quoting D.C. Code § 4-516 (a)) (alteration in original). This language reflects the D.C. Council's intent that the VVCCA assessment be imposed as an additional cost—and that it not merge into the fine for the offense imposed pursuant to D.C. Code § 22-3571.01 or other statute. The fines of an individual convicted of a ninety-day misdemeanor could thus be up to $1,250: the $1,000 maximum set forth in D.C. Code § 22-3571.01 (b)(4) plus the $250 maximum VVCCA assessment. The fines would not be capped at $1,000 with $50 to $250 of that going towards the VVCCA assessment.

[9] The majority says that "[t]his language would be unnecessary if the Council otherwise equated 'assessments' with 'fines.'" *Ante* at 9. But "laws often make explicit what might already have been implicit, 'for greater caution' and in order 'to leave nothing to construction.'" *Young v. United Parcel Serv., Inc.*, 135

(continued...)

defendant . . . to sanctions provided pursuant to § 16-706," *id.* That provision states in turn that "the court may, in the event of default in the payment of the fine imposed, commit the defendant for a term not to exceed one year." D.C. Code § 16-706.

The VVCCA assessment is a "fine" or "penalty" as those terms are commonly understood because it is "imposed as punishment for a crime" or is a burden "annexed by law or judicial decision to the commission of a crime." *Webster's Third New International Dictionary* 852, 1668. The VVCCA assessment shares the typical characteristics of a punishment. It is necessarily imposed following conviction as part of the sentence—in this case, it was included in the written judgment of Mr. Lopez-Ramirez's sentence[10]—and it cannot be imposed on a person who has not been convicted of an offense. *See* D.C. Code § 4-516 (a). The trial court has discretion, within a range, to decide how high an

---

(...continued)
S. Ct. 1338, 1363 (2015) (Scalia, J., dissenting) (quoting The Federalist No. 33, pp. 205–206 (J. Cooke ed. 1961) (A. Hamilton)); *see also District of Columbia v. Jerry M.*, 717 A.2d 866, 871 (D.C. 1998) ("The presumption against redundancy . . . 'is only a constructionary crutch and not a judicial ukase in the ascertainment of legislative intention.'" (quoting *Edwards v. United States*, 583 A.2d 661, 664 (D.C. 1990))).

[10] This appears to be regular practice. *See Colter v. United States*, 37 A.3d 282, 285 n.14 (D.C. 2012) ("Nor did the court err by amending its sentence to add periods of supervised release and assessments under the Victims of Violent Crime Compensation Act that were required as a matter of law." (emphasis added)).

assessment to impose for each conviction, and the range for more severe offenses (felonies) is higher than the range for less severe offenses (misdemeanors). *See id.* These considerations reflect a "punitive objective"—"making the punishment fit the crime." *Mayberry*, 774 F.2d at 1021. Finally, the VVCCA assessment is "collected as [a] fine[]," D.C. Code § 4-516 (c), meaning, among other things, that a defendant who fails to pay it can go to jail, D.C. Code § 16-706.

Putting aside that the VVCCA assessment bears many of the standard hallmarks of a fine or penalty (or punishment), and putting aside that we have no reason to think that the terms "fine" and "penalty" as used in the jury-trial statute mean something different from what they mean in ordinary legal discourse, the legislative history of the VVCCA of 1996—which enacted the current version of the assessment provision, D.C. Code § 4-516—further signals that the D.C. Council viewed the VVCCA assessment as a fine.

At the outset, the Judiciary Committee's report on the VVCCA of 1996 repeatedly refers to the assessments as "fines." D.C. Council, Report on Bill 11-657 at 3 (Sept. 26, 1996) (noting that under the VVCCA of 1981, "many judges did not consistently impose or collect the applicable *fines* needed to fund the" Crime Victims Compensation Program (CVCP) (emphasis added)); *id.* at 8 (noting the testimony of Professor Judith Bonderman that under the VVCCA of 1981, a

"small portion" of the CVCP funds came "from *fines* assessed by Superior Court judges" (emphasis added)); *id.* (noting the testimony of Dan Eddy recommending that the Council expand the funding for the CVCP by "including a broader range[] of offenses in the class of offenses for which judges can assess victim *fines*" (emphasis added)); *id.* at 9 (noting the testimony of Mary Lou Leary, Chief of the Superior Court Division of the U.S. Attorney's Office, that "the *fines* have not been changed since the inception of the [victims' compensation] program in 1982" (emphasis added)); *id.* at 11 (noting the testimony of Anne Goodson, stating that the proposed VVCCA of 1996 "will assure the judiciary that the *fines* assessed will be dedicated exclusively to use by the [victims'] compensation program" (emphasis added)). Although, as the majority notes, many—but not all—of the uses of the word "fine" are in the summaries of witness testimony, *ante* at 9 n.4, the report's consistent use of the term across multiple summaries indicates either that the Judiciary Committee viewed "fine" as an accurate term to describe the "assessment" or that most (if not all) of the interested parties who testified before the Judiciary Committee—including someone representing the U.S. Attorney's Office—viewed it as such.[11]

---

[11] The draft of the VVCCA of 1996 that was attached to the Judiciary Committee's report referred to the assessments as "*fines* that judges may assess for certain offenses." D.C. Council, Report on Bill 11-657 Attachment A (emphasis

(continued...)

Other indications that the D.C. Council viewed the VVCCA assessment as a fine include a resolution the Council passed during the period in which the VVCCA of 1996 was before the Judiciary Committee. That resolution—entitled "Sense of the Council on the Reestablishment of the District of Columbia Crime Victims Compensation Program of 1996," Resolution 11-337, 43 D.C. Reg. 3225 (June 4, 1996)—referred to the VVCCA assessments as "fines" and stated that "[i]n order to adequately fund the CVCP, the Council urges the Superior Court to diligently levy the maximum allowable *fines* on convicted criminals as required by D.C. Code § 3-414."[12] *Id.* at 3 (emphasis added). Fifteen years earlier, the person who proposed the VVCCA of 1981, Mayor Marion Berry, described the VVCCA assessment in his cover letter to the proposed legislation as a "special fine . . . to be imposed on convicted offenders." D.C. Council, Report on Bill No. 4-361, App'x A (Dec. 16, 1981).

---

(...continued)
added). Although this language was removed from the final version of the preamble, *see ante* at 9 n.4, nothing in the final version of the preamble (or anywhere else) indicates that the Council removed the language because it rejected the characterization. *See* 44 D.C. Reg. 1141. The later version of the preamble appears instead to be a truncated version of the earlier version.

[12] D.C. Code § 3-413 (c) at that time specifically said that the victim compensation fund "shall consist of," *inter alia*, "costs imposed under [the assessments] section." D.C. Code § 3-413 (c) (1994 Repl.).

## II. The Presumed Purpose of the Misdemeanor Streamlining Act Cannot Override the Clear Language of the Jury-Trial Statute and VVCCA.

My colleagues in the majority will not give effect to the ordinary meaning of the language in the jury-trial statute and the VVCCA assessment provision because, in their view, doing so would lead to a result in stark contradiction with the intent of the Misdemeanor Streamlining Act. *Ante* at 11. There is little doubt that the purpose of the Misdemeanor Streamlining Act was to render a large number of misdemeanor offenses non-jury-demandable, and that when the D.C. Council enacted the Misdemeanor Jury Trial Act of 2002, it did not envision that its amendment to the jury-trial statute would significantly increase the number of jury-demandable cases.[13] *Ante* at 10-12, 14–16. It is also true, as the majority states, that to fully give effect to the D.C. Council's intent in enacting the Misdemeanor Streamlining Act (and its intent that the Misdemeanor Jury Trial Act not significantly expand the number of cases tried by juries), the court would have to reject Mr. Lopez-Ramirez's interpretation of the jury-trial statute and the

---

[13] Even before the Misdemeanor Jury Trial Act of 2002 was enacted, there were numerous offenses—including most of the 180-day offenses—that would have been jury-demandable if the VVCCA assessment had been treated as a fine. See *ante* at 11 n.6, 16 n.7. So to the extent a drastic increase in the number of jury-demandable cases had already occurred, the D.C. Council's intent with respect to the Misdemeanor Jury Trial Act's effect on that number is less significant.

VVCCA assessment provision and deviate from the plain language of those statutes.

The majority's interpretation falters because it undermines the clear legislative purpose behind the jury-trial statute. As spelled out in the preceding section, the jury-trial statute reflects the judgment of the D.C. Council and Congress that defendants facing fines or monetary penalties above a certain threshold—$1,000 if charged with only a single offense but $4,000 otherwise— should receive a jury trial. The VVCCA assessment fits the functional criteria for a fine or penalty, and the D.C. Council that enacted the VVCCA of 1996 likely considered the VVCCA assessment a fine. The majority's interpretation deprives defendants whom the D.C. Council intended to receive jury trials—that is, defendants facing fines above the statutory threshold—of their jury trials.

Put another way, the statutes and legislative acts at issue in this case reflect mutually incompatible legislative sgoals or purposes. That leaves two choices for resolving the inconsistency. We can give effect to the purpose of the Misdemeanor Streamlining Act—but contravene the legislature's intent that defendants facing fines above a certain threshold receive a jury trial—by pretending that the VVCCA assessment is not a fine or penalty. Or we can give effect to the legislature's intent that defendants facing fines above a certain threshold receive a jury trial—but

undermine the purpose of the Misdemeanor Streamlining Act—by accepting that the VVCCA assessment fits the criteria of a fine or penalty.[14] At least the latter option is consistent with the ordinary meaning of the text of the relevant statutes.[15]

## III. There Is No Reason To Believe That the D.C. Council Would Favor the Majority's Interpretation.

The majority's analysis relies on the assumption that the D.C. Council, in enacting the various amendments to the jury-trial statute (such as the Misdemeanor Jury Trial Act of 2002), the VVCCA (of 1981 and of 1996), and the Misdemeanor Streamlining Act (in 1994), was fully aware of the existence of other pertinent

---

[14] There is a third way to resolve the inconsistency. We could hold that the VVCCA assessment plus any other fine imposed for an offense should be limited by the maximum fines set forth in D.C. Code § 22-3571.01 (b). Under such an interpretation, Mr. Lopez-Ramirez would not be entitled to a jury trial, and the explosion of jury trials that the majority fears would simply not happen. But this interpretation would be at odds with D.C. Code § 4-516 (a), which requires that the VVCCA assessment be imposed "[i]n addition to and separate from punishment imposed." See also *supra* note 8.

[15] The rule of lenity does not apply in this case because the statutes at issue are clear: the VVCCA assessment is a "fine or penalty" as those terms are normally used. *See Holloway v. United States*, 951 A.2d 59, 65 (D.C. 2008) (explaining that the rule of lenity is "a secondary canon of construction, and is to be invoked only where the statutory language, structure, purpose, and history leave the intent of the legislature in genuine doubt" (quoting *Cullen v. United States*, 886 A.2d 870, 874 (D.C. 2005))). A reasonable corollary of the rule of lenity might be that when a court is faced with legislative acts reflecting irreconcilable legislative purposes, the court gives effect to the purpose that favors the defendant over the purpose that favors the government.

enactments, that it thought through completely how they would interact with each other, and that this court can divine how the Council envisioned the enactments interacting with each other. *See, e.g., ante* at 9 (contending that Mr. Lopez-Ramirez's interpretation would "disrupt a statutory scheme that the Council has carefully constructed over decades"); *ante* at 16 (stating that the Council that passed the Misdemeanor Jury Trial Act of 2002 "would presumptively have been aware of the current VVCCA assessment system . . . ."); *cf. ante* at 5 (framing the "issue presented" in this case as whether "the [D.C.] Council . . . intend[ed] that a VVCCA assessment be treated as a fine or penalty for purposes of applying D.C. Code § 16-705"). The majority does not justify this assumption with any evidence in the legislative history, and no such evidence exists. Moreover, the relevant enactments were passed over a period of several decades and "their respective subject matters and purposes"—in particular, the VVCCA's purpose of creating and funding a victims' compensation fund and the Misdemeanor Streamlining Act's purpose of reducing the number of jury trials—"are different." *District of Columbia v. Thompson*, 593 A.2d 621, 630 (D.C. 1991); *see also* 2B Shambie Singer, *Sutherland Statutory Construction* § 51:1 (7th ed.) ("[I]n the absence of some evidence that legislators were cognizant of related statutes, courts should reject both the presumption and the rule of *in pari materia* until after exhausting all

other means to determine legislative intent."). So the majority's central assumption is unsound.

It is not, moreover, the job of this court to resolve the conflict between the purpose of the Misdemeanor Streamlining Act and the text and purpose of the jury-trial statute. *Cf.* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 237–38 (2012) (noting that the absurdity doctrine "does not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions"). Indeed, if the D.C. Council today had to decide how to resolve the apparent inconsistency between the purpose of the Misdemeanor Streamlining Act and the jury-trial statute, the Council might take any number of approaches. It might adopt the majority's interpretation and indicate that the VVCCA assessment does not count as a "fine" or "penalty" for the purpose of the jury-trial statute. Or it might conclude, alternatively, that reducing the number of misdemeanor jury trials is no longer a priority and go on to adopt Mr. Lopez-Ramirez's proposed interpretation. It might also solve the conflict by decreasing the fines or VVCCA assessments, pushing offenses back below the jury-trial threshold. This court cannot know. The majority, by deviating from the clear language of the jury-trial statute and the VVCCA assessment provision based on "mere inference or surmise or speculation" about what the Council wanted, "might well [have] defeat[ed] true legislative intent." *Grayson v.*

*AT & T Corp.*, 15 A.3d 219, 237–38 (D.C. 2011) (en banc) (brackets omitted).

I respectfully dissent.